# United States District Court

| | District | MASSACHUSETTS |
|---|---|---|

| Name JULIO GUERRERO | Prisoner No. W67193 | Case No. |
|---|---|---|

| Place of Confinement | MASSACHUSETTS CORRECTIONAL INSTITUTION NORFOLK 2 CLARK STREET - POST OFFICE BOX 43 NORFOLK, MASSACHUSETTS 02056 |
|---|---|

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| JULIO GUERRERO  V. | LUIS SPENCER |

The Attorney General of the State of: MASSACHUSETTS

## PETITION

1. Name and location of court which entered the judgment of conviction under attack  WORCESTER COUNTY SUPERIOR COURT, 2 MAIN STREET, WORCESTER, MA 01608

2. Date of judgment of conviction  OCTOBER 14, 1999

3. Length of sentence  TEN (10) to TWELVE (12) YEARS, WITH CONCURRENT SENTENCES OF FOUR (4) to FIVE (5) YEARS AND ONE (1) YEAR.

4. Nature of offense involved (all counts)  COUNT #1 - TRAFFICKING IN MORE THAN 200 GRAMS OF COCAINE;  COUNT #2 - POSSESSION OF CONTROLLED SUBSTANCE; AND, COUNT #3 - FALSIFYING A DRIVER'S LICENSE.

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☒   No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☐   No ☒

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐       No ☒

(5) Result ___DENIED BY PLEA HEARING JUDGE._____

(6) Date of result ___JUNE 17, 2002_____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐       No ☐

(5) Result _____

(6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc.       Yes ☒       No ☐  (PLEASE SEE ADDITIONAL INFORMATION
(2) Second petition, etc.      Yes ☐       No ☐   AT ITEM #11, SUPRA)

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

___DID NOT APPEAL FROM THE ADVERSE ACTIONS ON FIRST AND SECOND NEW TRIAL MOTIONS___
___BECAUSE I DID NOT HAVE COUNSEL, AND DID NOT KNOW HOW TO DO SO._____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.
    Caution: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

C.    Ground three: _____

_____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____

_____

_____

_____

_____

_____

D.    Ground four: _____

_____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐        No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

(a)    At preliminary hearing    LAWRENCE M. PERLMUTTER, ESQUIRE
       *+ARRAIGNMENT*    15 COURT SQUARE, SUITE 660
       BOSTON, MA              02108

(b)    At ~~arraignment and~~ plea    DESMOND P. FITZGERALD, ESQUIRE
       59 TEMPLE PLACE
       BOSTON, MA              02111

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JULIO GUERRERO,

PETITIONER

V.

C.A. NO. _____

LUIS SPENCER,

RESPONDENT

MEMORANDUM OF LAW IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS

Comes now the Petitioner, Julio Guerrero, pro se, pursuant to 28 U.S.C. § 2254, and hereby moves this Honorable United States District Court to grant his application for habeas relief.

GROUNDS PRESENTED

I.  PLEA COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN FAILING TO PROSECUTE A MOTION TO SUPPRESS THE EVIDENCE IN THIS CASE WHICH HAD BEEN OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

STATEMENT OF THE CASE

On December 11, 1996, the Worcester County Grand Jury returned indictment number WOCR1996-00666 against Julio Guerrero on the charges of (1) falsifying a driver's license, (2) trafficking in over 200 grams of cocaine, and (3) possession of heroin [R. 2 & 6-8].[1] On March 19, 1997, Petitioner's (hereafter "Guerrero") counsel (Lawrence M. Perlmutter, Esq.) filed a motion to suppress [R. 2]. On March 21, 1997, Guerrero defaulted [R. 2]. Mr. Guerrero next appeared in court on these charges on September

---

[1]    "R. __" ~ Refers to the "Record Appendix," with it's pages consecutively numbered, separately bound and herewith filed.
    "Tr. __" ~ Refers to the Plea Hearing Transcripts, which are separately bound and herewith filed.

30]. This motion was also denied by the court on June 17, 2002 [R. 4 & 24], with a motion to reconsider, with memorandum and affidavit [R. 4 & 18], denied on September 10, 2002 [R. 5 & 10]. Timely notices of appeal were filed [R. 4-5, 23 & 9, respectively].

The new trial and reconsideration motion appeals were entered in the Massachusetts Appeals Court (hereafter "Appeals Court") and thereafter consolidated by motion allowed on October 28, 2002 [R. 5]. However, on September 24, 2003 the Appeals Court upheld Judge Gants' denials of each motion [R. 5 & 68]. A timely application for further appellate review [R. 69], to the Massachusetts Supreme Judicial Court (hereafter "SJC"), was denied on November 25, 2003 [R. 83].

## STATEMENT OF FACTS

While performing a routine patrol at 1:30 a.m. on September 8, 1996, Massachusetts State Police Trooper Cordero (hereafter "Tpr. Cordero") approached a blue 1987 Buick sedan on Route 2 in Leominster [Tr. 11]. The trooper observed Massachusetts registration number 732WYN in white and red lettering on the rear license plate of this vehicle [Tr. 11]. As he passed the car, Tpr. Cordero noticed that it had no front license plate displayed [Tr. 11]. The trooper then positioned his marked cruiser behind the vehicle and signaled for it to pull over [Tr. 11].

Once the driver complied, Tpr. Cordero approached the vehicle [Tr. 11]. While doing so, he noticed only one person was in the vehicle [Tr. 11]. "When the trooper reached the door of the vehicle he observed a license plate resting on the dashboard facing upward" [Tr. 11]. Trooper Cordero then asked the driver

- 3 -

saw "Nanino" stopped by the State Police on Route 2 [Tr. 14]. The Spanish speaking male went on to state, "But that thing is well secured, right? They're not going to find it; right? . . . Because he always brings me something; we cut it here. I don't need any right now. I am his friend" [Tr. 14].

On or about June 12, 2002, Guerrero filed a motion for new trial [R. 30]. In his supporting affidavit, Guerrero asserted that the prosecutor's statement at the plea hearing (and from which the above recitation has been drawn) concerning the license plate was accurate, but that it contained insufficient detail [R. 38]. Mr. Guerrero swore under the pains and penalties of perjury that the plate not only rested on the dashboard, but that it had been wedged between the dashboard and the windshield [R. 38]. He also averred that the license plate was pressed flush against the windshield and faced forward so as to make it clearly visible to any onlooker [R. 38].

The Commonwealth did not file any response to that motion. And, on June 17, 2002 Judge Gants denied the motion without an evidentiary hearing [R. 24].

In a footnote on the third page of his decision, Judge Gants wrote that, "Although not mentioned at the change of plea hearing, the Commonwealth now says that it also promised not to charge the defendant with bail jumping" [R. 26]. On the following page of his decision, the judge wrote that, "The Commonwealth does not contend that" the trooper had reasonable suspicion that a crime had been committed, but instead, "the Commonwealth contends that the trooper was authorized to stop" the car after observing a traffic violation [R. 27].

- 5 -

Guerrero raised this claim under both State and Federal standards through citation to Commonwealth v. DiPietro, 35 Mass.App.Ct. 638, 640 (1993); and, Commonwealth v. Willis, 415 Mass. 814, 817 (1993). See, e.g., Phoenix v. Matesanz, 189 F.3d 20, 26 n. 4 (1st Cir. 1999)(recognizing functional equivalent of Federal and State standards of review via citation to State case law only which embraces Federal standard).

In DiPietro, the Appeals Court embraced the standard of Hill v. Lockhart, 474 U.S. 52, 58-59 (1985), which established under the Sixth Amendment that if a defendant can demonstrate that he would have been successful under Fourth Amendment analysis if a suppression motion had been prosecuted, then counsel would be deemed to have rendered ineffective assistance; and, further embraced the standard of Commonwealth v. Saferian, 366 Mass. 89, 96 (1974)(long-recognized as functional equivalent of Federal standard of review on ineffective assistance). And, of equal import, in Willis, the SJC specifically embraced the standard of review pertinent to "reasonable suspicion" articulated in Terry v. Ohio, 392 U.S. 1, 20-22 (1968), which established that for a stop to be constitutional the police must possess reasonable suspicion, based on more than mere conjecture or surmise, that the defendant had committed, was committing, or was about to commit a crime.

Of additional relevance, in the application to the SJC for further appellate review, Guerrero further stressed the raised deprivations of Federal Constitutional magnitude through direct citation to Commonwealth v. Lykus, 406 Mass. 135, 139-140 (1989)(relying upon Sixth Amendment and Strickland v. Washington,

ARGUMENT

I.  PLEA COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN
FAILING TO PROSECUTE A MOTION TO SUPPRESS THE EVIDENCE
IN THIS CASE WHICH HAD BEEN OBTAINED IN VIOLATION OF
THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

If, after pleading guilty, a defendant can demonstrate that
he would have prevailed on a motion to suppress the evidence
against him, he has then established ineffective assistance of
counsel for the failure to file that motion, and his plea must
then be withdrawn. Kimmelman, supra, 477 U.S. at 383-387.
DePietro, supra, 25 Mass.App.Ct. at 640.

A determination by this Court that a motion to suppress
would have succeeded should suffice for a finding of ineffective
assistance for having failed to file such a motion. Kimmelman,
477 U.S. at 375 ("failure to litigate a Fourth Amendment claim
competently" is ineffective assistance). The suppression of all
of the evidence discovered subsequent to the stop would have
effectively resulted in the dismissal of the charges against
Guerrero. The failure to file this motion before the guilty plea
had been entered should constitute per se ineffective assistance.
Hill, supra, 474 U.S. at 58-60 ("failure to [litigate] a
potential affirmative defense to the crime charged [which] would
have succeeded" - ineffective assistance). See also Pena, supra,
31 Mass.App.Ct. at 205; Lykus, supra, 406 Mass. at 139-140. Mr.
Guerrero stated in his August 30, 2000 motion that "Attorney
Desmond P. Fitzgerald knowingly and deliberately misled,
misinformed, coerced, lied and confused the defendant which
resulted in the defendant pleading guilty in the instant case"
[R. 46]. Thus based, Guerrero's guilty plea was not a voluntary

Assistant District Attorney Progen's statement at the plea hearing that the trooper "observed a license plate resting on the dashboard facing upwards" demonstrates, Guerrero had complied with all of the mandates of M.G.L.c. 90, § 6.

The only Massachusetts case with a somewhat similar factual scenario is Commonwealth v. Kimball, 37 Mass.App.Ct. 604, 605-606 (1994). In that case the Appeals Court held that an officer did not notice a visible violation of the law although he witnessed a vehicle operating with its rear license plate askew and held by only one screw. Id. Obviously a license plate resting on a dashboard is more securely attached and displayed more conspicuously than the plate in Kimball, 37 Mass.App.Ct. at 605, and must, therefore, also be compliant with M.G.L.c. 90, § 6.

This Court may have additional concerns as to whether the dashboard satisfied the legislative intent for where the plate should have been attached. M.G.L.c. 90, § 6, however, provides no further specifics with respect to where the plate should be attached other than "at the front - - of said vehicle." It would be hard to describe the dashboard as not being at the front of a motor vehicle.

Given the complete absence of any Massachusetts case that directly addressed whether a license plate on a dashboard constituted a violation of M.G.L.c. 90, § 6, reliance on precedent from other jurisdictions for additional guidance would seem reasonable. This Court may not be overly surprised to learn, however, that a similar dearth exists in almost every other state. Yet, defense counsel (Barond) did find a case from the Ohio Court of Appeals, City of Pataskala v. Klein, 1999 Ohio App.

Guerrero's vehicle if, as the prosecutor stated at the plea hearing, he did not see the front license plate while driving in his cruiser. Id. As opposed to the patrolman in City of Pataskala, however, Tpr. Cordero was well aware of the plate displayed in plain view on the dashboard before he began questioning Guerrero. The trooper's awareness of this plate voided any legitimate basis for an inquiry of Guerrero. The evidence discovered as a result of that further, and unnecessary inquiry must, therefore, be suppressed. Id.

This reasoning comports with that in Florida v. Royer, 460 U.S. 491, 500 (1983), where the Supreme Court of the United States stated that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." See also Commonwealth v. Ciaramitaro, 51 Mass.App.Ct. 638, 643 (2001). Thus, when Tpr. Cordero noticed the license plate on the dashboard he "effectuated the purpose of the stop" before he obtained Guerrero's driver's license. Mr. Guerrero had not violated the law, the detention lasted longer than necessary, and the suppression of all subsequently discovered evidence should be mandated. The extent that the trooper exceeded what was necessary under these particular circumstances raises the stop to the level of an arrest which, in this case, lacks a showing of probable cause. Id.

Judge Gants seemingly concluded that whether the license plate on Guerrero's dashboard complied with M.G.L.c. 90, § 6 was irrelevant [R. 10]. According to the judge's decision, the trooper's belief that it might have been a violation constituted sufficient reasonable suspicion to continue to detain Guerrero

of Pataskala v. Klein, 1999 Ohio App. Lexis 5114, that Guerrero complied with M.G.L.c. 90, § 6, the Court should also find that the trooper's mistaken belief that a violation had occurred did not constitute sufficient reasonable suspicion to continue detaining Guerrero. See also People v. Redinger, 906 P.2d 81 (1995); and, United States v. McSwain, 29 F.3d 558, 561 (10th Cir. 1994)(purpose of stop met when valid registration sticker seen on foot approach to vehicle - request for license unconstitutional).

As is discussed more clearly, infra, it becomes further obvious from the factual case record that Tpr. Cordero's relied upon "reasonable suspicion" had actually been negated well before his stop of Guerrero's vehicle via the fact that the trooper, while still cruising in front of Guerrero's vehicle, plainly had observed the front license plate on the vehicle dashboard, although contrary to his apparent and mistaken belief that it must be attached "on it's front bumper" [R. 39]. M.G.L.c. 90, § 6. Accord Kimmelman, 477 U.S. at 374 ("complainant need prove only that the search or seizure was illegal and that it violated his reasonable expectation of privacy").

There are, however, four other Ohio cases and a California case which require more than City of Pataskala to find that a license plate on a dashboard had been "displayed in plain view" or was "clearly visible." State v. Hanna, 2000 Ohio App. Lexis 879; State v. Durfee, 1998 Ohio App. Lexis 865; State v. Poole, 1995 Ohio App. Lexis 2459; State v. Richards, 1993 Ohio App. Lexis 120; and, People v. Weekly, 42 Cal. App. 4th 310 (1995)(California statute requires that the front plate be "clearly visible"). These cases have held that a license plate on

habeas applicant did not receive a full and fair evidentiary hearing in a state court"). On this particular aspect of the claim, the relevant facts have not yet been found.

In contrast with the facts presented by the Commonwealth at the plea hearing, Tpr. Cordero's police report indicated that he noticed the plate on the dashboard while in his cruiser [R. 39], a matter easily ascertainable by plea counsel (FitzGerald). In addition, Guerrero asserted in his affidavit that the prosecutor's statement at the plea hearing concerning the license plate was accurate, but that it contained insufficient detail [R. 38]. Mr. Guerrero swore under the pains and penalties of perjury that the plate not only rested on the dashboard, but it had been wedged between the dashboard and the windshield [R. 38]. Further, the license plate was pressed flush against the window and faced forward [R. 38]. Accord McSwain, 29 F.3d 560-564.

The combination of Tpr. Cordero's police report and Guerrero's affidavit provided a substantial issue regarding whether any other driver, including the trooper, could have seen the license plate on the dashboard. These documents also contain additional evidence concerning whether the license plate on the dashboard was "displayed conspicuously" and "attached."

## CONCLUSION

Petitioner, Julio Guerrero, has suffered the deprivation of his constitutional rights to the effective assistance of counsel and to be free from conviction obtained by the use of evidence gained pursuant to an illegal search and seizure, pursuant to the Sixth and Fourth Amendments to the United States Constitution, respectively.

## Addendum

G.L. c. 90, § 6

*26677 M.G.L.A. 90 § 6

# MASSACHUSETTS GENERAL LAWS ANNOTATED
## PART I. ADMINISTRATION OF THE GOVERNMENT
## TITLE XIV. PUBLIC WAYS AND WORKS
## CHAPTER 90. MOTOR VEHICLES AND AIRCRAFT
## MOTOR VEHICLES

*Current through Ch. 394 of the 2002 2nd Annual Sess.*

## § 6. Display of number plates; temporary number plates

Every motor vehicle or trailer registered under this chapter when operated in or on any way in this commonwealth shall have its register number displayed conspicuously thereon by the number plates furnished by the registrar in accordance with section two or five or by temporary number plates authorized by the registrar as hereinafter provided, one number plate to be attached at the front and one at the rear of said motor vehicle, and one number plate to be attached at the rear of said trailer, but if the registrar issues but one number plate it shall be attached to the rear of the vehicle so that it shall always be plainly visible. The said number plates shall be kept clean with the numbers legible and shall not be obscured in any manner by the installation of any device obscuring said numbers, and during the period when the vehicle or trailer is required to display lights the rear register number shall be illuminated so as to be plainly visible at a distance of sixty feet. No number plates other than such as are procured from the registrar or such as may be authorized by him for temporary use, except as provided in section three, shall be displayed on any motor vehicle or trailer so operated; provided, that a motor vehicle or trailer which by reason of its interstate operation is registered in this commonwealth and elsewhere may display the register number plates of this and any other state or country in which it is registered, if, while being operated on the ways of this commonwealth, the number plates furnished by the registrar, or temporary number plates authorized by him as hereinafter provided, are displayed as required hereby. If any number plate supplied by the registrar is lost or mutilated or if the register number thereon becomes illegible, the owner or person in control of the vehicle for which said number plate was furnished shall make application for a new number plate, and thereupon the registrar shall issue to such applicant a permit allowing him to place a temporary number plate bearing his register number on said vehicle until a number plate of the regular design is made and delivered to said applicant; provided, that all such temporary number plates and the register numbers thereon shall conform to the regular number plates and be displayed as nearly as may be as herein provided for said regular number plates. Any motor vehicle or trailer may, if duly registered, be operated, pushed, drawn or towed or remain upon any way between the hours of twelve o'clock noon on the date on which its registration expires and twelve o'clock noon on the following day, if the following day is the first day of the new registration period, and if such vehicle or trailer displays its register number for either registration period as otherwise required by this section.

Copyright (c) West Group 2003 No claim to original U.S. Govt. works

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

JULIO GUERRERO,
                    PETITIONER

            V.                              C.A. NO. _____

LUIS SPENCER,
                    RESPONDENT

RECORD APPENDIX

IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS

RESPECTFULLY SUBMITTED BY:

JULIO GUERRERO, PRO SE
POST OFFICE BOX 43
NORFOLK, MA        02056

RECORD APPENDIX – TABLE OF CONTENTS

Docket Entries — R. 1

Indictments — R. 6

Notice of Appeal (Reconsideration Motion) — R. 9

Order on Motion for Reconsideration — R. 10

Commonwealth's Opposition to Reconsideration — R. 11

Motion for Reconsideration — R. 18

Memorandum Supporting Reconsideration — R. 19

Affidavit in Support of Reconsideration — R. 22

Notice of Appeal (Third Motion for New Trial) — R. 23

Order on Third Motion for New Trial — R. 24

Third Motion for New Trial — R. 30

Memorandum Supporting Third Motion for New Trial — R. 31

Affidavit Supporting Third Motion for New Trial — R. 38

Police Report — R. 40

City of Pataskala v. Klein — R. 42

First Motion for New Trial — R. 45

Second Motion for New Trial — R. 46

Commonwealth's Opposition to First Motion for New Trial — R. 49

Order on First Motion for New Trial — R. 63

Appeals Court Memorandum and Order Pursuant to Rule 1:28 September 24, 2003 — R. 68

Application for Further Appellate Review — R. 69

Further Appellate Review Denial — R. 83

Brief of Defendant on Appeal — R. 84

Reply Brief of Defendant on Appeal — R. 98

# Commonwealth of Massachusetts
### WORCESTER SUPERIOR COURT
### Case Summary
### Criminal Docket

## WOCR1996-00666
## Commonwealth v Guerrero, Julio

| | | | | |
|---|---|---|---|---|
| File Date | 12/11/1996 | Status | Disposed (appeal denied) (dapden) | |
| Status Date | 12/10/2003 | Session | 1 - Crim 1 (204 Worcester) | |
| Jury Trial | Waived | Origin | I - Indictment | |
| Lead Case | | | | |

| | | | |
|---|---|---|---|
| Trial Deadline 01/13/1998 | Deadline Status Deadline active since return date | Status Date | 12/17/1996 |
| | Custody Status Middlesex House of Correction (Billerica) | Start Date | |
| Weapon | Substance | Prior Record | Unknown |
| Arraignment 01/13/1997 | PTC Deadline | Pro Se Defendant No |

### OFFENSES

| Num | Offense | Code | Status | Status Date |
|---|---|---|---|---|
| 1 | 09/08/1996 | 094C:032E:b4 | Guilty plea | 10/14/1999 |
| | Traffic in controlled substance, 200+g | | | |
| 2 | 09/08/1996 | 094C:034.3 | Guilty plea | 10/14/1999 |
| | Controlled substnc, possess heroin | | | |
| 3 | 09/08/1996 | 090:024B | Guilty plea | 10/14/1999 |
| | Falsify/steal permit/license/registration/inspection | | | |

### PARTIES

**Defendant**
Julio Guerrero
338 Pawtucket Street
Lowell, MA 01854
DOB: 06/15/1960
Gender: Male
MSP Leominster
Active 12/11/1996

**Private Counsel 551479**
Lawrence M Perlmutter
15 Court Square
Suite 660
Boston, MA 02108
Phone: 617-523-1545
Fax: 617-523-4652
Inactive 09/09/1999

**Private Counsel 634881**
Desmond P FitzGerald
London Lara & Fitzgerald
59 Temple Place
Boston, MA 02111
Phone: 617-542-0033
Fax: 617-542-8410
Inactive 03/30/2001

**Public Counsel 564032**
David Barend
2 Stonewood Circle
North Attleboro, MA 02760
Phone: 508-316-1171
Fax: 508-316-1192
Active 03/30/2001

MAS-20040305
Case 1:04-cv-11763-RGS   Commonwealth of Massachusetts   Filed 08/09/2004   Page 18 of 113
WORCESTER SUPERIOR COURT
Case Summary
Criminal Docket
07/21/2004
01:25 PM

# WOCR1996-00666
## Commonwealth v Guerrero, Julio

**Plaintiff**
Commonwealth
Gender: Unknown
Active 12/11/1996

**Alias deft name**
Renaldo  Arias
Gender: Unknown
Active 12/11/1996

**Other interested party**
Julio  Guerrero
MCI - Norfolk
PO Box 43
Norfolk, MA 02056
Gender: Unknown
Active 03/22/2004 Notify

**District Atty's Office 407160**
Donald H Progen
Worcester County District Atty's Office
2 Main Street
Courthouse
Worcester, MA 01608
Phone: 508-755-8601
Fax: 508-831-9899
Active 08/27/1999

### ENTRIES

| Date | Paper | Text |
|------|-------|------|
| 12/11/1996 | 1.0 | Indictment returned |
| 12/17/1996 | | Summons for arraignment issued |
| 01/13/1997 | | Plea of not guilty |
| 01/13/1997 | | Same bail $25,000.00 cash or $250,000.00 surety (Herbert F Travers, Justice) |
| 01/13/1997 | 2.0 | Appearance of Deft's Atty: Perlmutter |
| 02/05/1997 | 3.0 | Pre-trial conference report - Approved (Travers,J.) |
| 02/19/1997 | | Bail satisfied: $25,000.00 cash BB# 3674 Surety- Rafael Benzan 510 Salsa Street Malden, Ma - 3/31/97 Bail forfeited to State Treasurer ($25,000) March '97 Revenue. |
| 03/19/1997 | 4.0 | Deft files Motion to Suppress Search and Seizure - Without Warrant w/ Memorandum of Law in Support and Defendant's Affidavit in Support |
| 03/19/1997 | 5.0 | Deft files Motion to Dismiss w/Memorandum of Law in Support |
| 03/21/1997 | | Deft defaulted; warrant issued |
| 03/21/1997 | | A BAIL FORFEITURE HEARING is scheduled for FRIDAY MARCH 28,1997, Worcester Superior Court, Room #204 at 9:00 a.m. If defendant FAILS to appear at that time and date, the $150.00 cash bail you posted will be FORFEITED to the Treasurer of the Commonwealth; (Sosman,J.) |
| 03/28/1997 | | Bail ordered forfeited (Sosman,J.) |
| 04/04/1997 | | Filed to locate pending apprehension (Golden,CM) |
| 08/16/1999 | | Habeas corpus for Deft at Middlesex County House of Correction/ |

MAS-20040305
Commonwealth of Massachusetts
Case 1:04-cv-11763-RGS WORCESTER SUPERIOR COURT 08/09/2004 Page 19 of 113
07/21/2004
01:25 PM
Case Summary
Criminal Docket

## WOCR1996-00666
## Commonwealth v Guerrero, Julio

| Date | Paper | Text |
|------|-------|------|
| | | Billerica |
| 08/30/1999 | | Habeas corpus for Deft at Middlesex House of Correction (Billerica) |
| 09/03/1999 | | Bail set: $100,000.00 cash without prejudice or $1,000,000.00 |
| | | w/surety (Fecteau,J.) |
| 09/03/1999 | | Default removed; warrant recalled (Fecteau,J.) |
| 09/03/1999 | | Habeas corpus for Deft at Middlesex House of Correction (Billerica) |
| 09/09/1999 | 6.0 | Appearance of Deft's Atty: FitzGerald |
| 09/10/1999 | | Habeas corpus for Deft at Middlesex House of Correction (Billerica) |
| 09/29/1999 | | Habeas corpus for Deft at Middlesex House of Correction (Billerica) |
| 10/07/1999 | | Habeas corpus for Deft at Middlesex House of Correction (Billerica) |
| 10/14/1999 | | RE offense 1: Guilty plea |
| 10/14/1999 | | Defendant warned per Chapter 278, Section 29D |
| 10/14/1999 | | Sentence imposed: 10-12 years Cedar Junction forthwith not |
| | | withstanding any sentence serving (Gants,J.) |
| 10/14/1999 | | Sentence credit given as per 279:33A: 25 days |
| 10/14/1999 | | Victim-witness fee assessed: $60.00 |
| 10/14/1999 | | Drug fee assessed: $150.00 |
| 10/14/1999 | | RE offense 2: Guilty plea |
| 10/14/1999 | | Sentence imposed: 3-5 years to be served concurrent with 96-0666(1) |
| | | to be served forthwith (Gants,J.) |
| 10/14/1999 | | RE offense 3: Guilty plea |
| 10/14/1999 | | Sentence imposed: 1 year House of Correction to be served concurrent |
| | | with 96-0666(1) to be served forthwith (Gants,J.) |
| 11/01/1999 | | Victim-witness fee paid as assessed $60.00 |
| 11/01/1999 | | Drug fee paid as assessed $150.00 |
| 11/15/1999 | 7.0 | Deft files Motion for New Sentence Pursuant to Mass.R.Crim.P. 29 Copy |
| | | to Judge Gants, Middlesex County |
| 11/15/1999 | 8.0 | Deft files Motion for New Trial Pursuant to Mass.R.Crim.P. 30 Copy to |
| | | Judge Gants, Middlesex County |
| 11/15/1999 | 9.0 | Notice of appeal |
| 12/03/1999 | 10.0 | Commonwealth files Memorandum in Opposition to Defendant's Motion for |
| | | New Sentence Pursuantto Mass.R.Crim P.29(B) |
| 12/03/1999 | 11.0 | Commonwealth files Memorandum in Opposition to Defendant's Motion for |
| | | New Trial Pursuant to Mass.R.Crim.P.30 |
| 12/10/1999 | | Motion (P#7) Denied. The defendant has provided no information why he |
| | | is entitled to a new sentence since he agreed to the sentence that |
| | | was imposed and mandatory sentencing provisions are applicable |
| | | (Gants,J.) Copy to DA & Atty FitzGerald |
| 12/10/1999 | | Motion (P#8) Denied. The defendant has presented no information why |
| | | he is entitled to a new trial after having pleaded guilty following a |
| | | comprehensive colloquy. (Gants,J.) Copy to DA & Atty FitzGerald |
| 06/26/2000 | 12.0 | Deft files Motion for Free Transcripts |
| 08/01/2000 | | Sentence Appeal assembled & mailed to Appellate Division |
| 08/02/2000 | | Motion (P#12) Allowed (Gants,J.) Copy to DA & defendant |
| 08/24/2000 | | Court Reporter Pat Miller O'Brien is hereby notified to prepare one |
| | | copy of the transcript of the evidence of 10/14/1999. |

MAS-20040305

Case 1:04-cv-11763-RGS    Document 24    Filed 08/09/2004    Page 20 of 113

07/21/2004
01:25 PM

Commonwealth of Massachusetts
WORCESTER SUPERIOR COURT
Case Summary
Criminal Docket

## WOCR1996-00666
## Commonwealth v Guerrero, Julio

| Date | Paper | Text |
|------|-------|------|
| 08/30/2000 | 13.0 | Deft files Motion for a New Trial (Ineffective Assistance of Counsel) Copy to Judge Gants,Middlesex County, Cambridge) |
| 08/30/2000 | 14.0 | Deft files Motion for Declaration of Indigency w/Affidavit of Indigency (Copy to Judge Gants, Middlesex County, Cambridge) |
| 08/30/2000 | 15.0 | Deft files Motion for Assignment to Committee for Public Counsel Services (CPCS) Screening Panel (Copy to Judge Gants, Middlesex County, Cambridge) |
| 08/30/2000 | 16.0 | Deft files Memorandum of Law in Support of Motion to Withdraw Guilty Plea and for a New Trial w/exhibits (Copy to Judge Gants, Middlesex County, Cambridge) |
| 08/30/2000 | 17.0 | Deft files Motion for Evidentiary Hearing on Defendant's Motion for a New Trial (Copy to Judge Gants, Middlesex County, Cambridge) |
| 08/30/2000 | 18.0 | Deft files Petition for Writ of Habeas Corpus Ad Testificandum (Copy to Judge Gants, Middlesex County, Cambridge) |
| 01/10/2001 | | SECOND COPY of P#'s 13 thru 18 mailed to Judge Gants Plymouth County, Brockton |
| 01/17/2001 | 19.0 | Order on Defendant's Motion for New Trial (Gants,J.) See Order for Judge's endorsement |
| 01/17/2001 | | Motion (P#14) Allowed (Gants,J.) Copy to DA & Defendant |
| 01/17/2001 | | Motion (P#15) Allowed (Gants,J.) Copy to DA & Defendant |
| 01/23/2001 | | Court Reporter Pat A. Miller O'Brien is hereby notified to prepare one copy of the transcript of the evidence of October 14,1999 SECOND NOTICE. |
| 01/24/2001 | | Transcript of testimony received from Patricia A. O'Brien " Change of Plea" October 14,1999 |
| 01/24/2001 | | Copy of trancript mailed to defendant per Allowed Motion P#12 |
| 01/26/2001 | | Committee for Public Counsel Services appointed |
| 02/16/2001 | 20.0 | Commonwealth files Memorandum in Opposition to Defendant's Motion for New Trial w/Affidavit |
| 02/16/2001 | | Judge Ralph D. Gants retains jurisdiction |
| 03/30/2001 | | Appointment of Counsel David Barend to Review Motion to Withdraw Guilty Plea |
| 04/09/2001 | | Copy of Change of Plea Transcript, Motion P#20 & Docket mailed to Judge Gants. |
| 04/23/2001 | 21.0 | ORDER on Defendant's Motion for a New Trial - Denied without a hearing (Gants,J.) Copy to DA & Defendant |
| 04/23/2001 | | Motion (P#14) DENIED as moot in view of the denial of the Motion for New Trial (Gants,J.) Copy to DA & Defendant |
| 04/23/2001 | | Motion (P#15) DENIED as moot in view of the denial of the Motion for New Trial (Gants,J. Copy to DA & Defendant |
| 04/23/2001 | | Motion (P#17) DENIED (Gants,J.) Copy to DA & Defendant |
| 04/23/2001 | | Motion (P#18) DENIED in view of the denial of the Motion for New Trial without a hearing (Gants,J.) Copy to DA & defendant |
| 06/13/2002 | 22.0 | Motion by Deft: Motion for New Trial w/Memorandum in Support (Copy to Judge Gants, Middlesex County) |
| 06/21/2002 | 23.0 | ORDERED: Re: P#22 (DENIED) on Defendant's Motion for a New Trial (See |

## WOCR1996-00666
## Commonwealth v Guerrero, Julio

| Date | Paper | Text |
|------|-------|------|
| | 23.0 | Order) (Copies sent to DA and Atty Barend) |
| 07/02/2002 | 24.0 | NOTICE of APPEAL (denial of Motion for New Trial) FILED by defendant |
| 09/03/2002 | 24.5 | Motion by Deft: for Reconsideration of Motion for New Trial with Memorandum and Affidavit in Support of |
| 09/05/2002 | 25.0 | Motion by Commonwealth: Memorandum in Opposition to Defendant's Second Motion for New Trial and Motion to Reconsider ( copy sent to Judge Gants in Middlesex) |
| 09/10/2002 | | Notice of assembly of record; mailed to Appeals Court per Rule 9(d) |
| 09/10/2002 | 26.0 | ORDERED: (Re: P#24.5) on Defendant's Motion for Reconsideration DENIED (See Order) (Gants, Justice) (Copies sent to DA and Attorney Barend) |
| 09/20/2002 | 27.0 | Notice of Entry of appeal received from the Appeals Court No. 2002-P-1254 dated 09-16-02 |
| 09/20/2002 | 28.0 | NOTICE of MOTION APPEAL FILED by Julio Guerrero (P#24.5) |
| 10/01/2002 | | Notice of assembly of record; mailed to Appeals Court per Rule 9(d) |
| 10/09/2002 | | Notice of Entry in Appeals Court on October 7, 2002, received |
| 10/30/2002 | 29.0 | Notice of Entry of appeal received from the Appeals Court (See Letter) Motion is allowed and 02-P-1338 is consolidated with 02-P-1254 |
| 01/29/2003 | | A copy of the transcript of 10/14/99 (change of plea hearing) mailed to Appeals Court |
| 12/10/2003 | 30.0 | Rescript received from Appeals Court; judgment AFFIRMED   The orders denying the defendant's third motion to withdraw his guilty pleas and denying his motion for reconsideration of that order are affirmed. By the Court,   Perretta, Brown & Laurence, JJ) Entered: September 24, 2003 |
| 02/09/2004 | 31.0 | General correspondence regarding his sentence appeal (I contacted the Appellate Division on 02-19-04 / Disregard any notice from the Appellate Division sent on 02-18-04 - Your sentence appeal will be heard in the May 2004 sitting) |
| 03/08/2004 | 32.0 | Motion by Deft: to return forfeited bail with affidavit in support of |
| 03/08/2004 | 33.0 | Deft files a request for a hearing |
| 03/08/2004 | 34.0 | Motion by Deft: for a writ of Habeas Corpus |
| 03/08/2004 | | P#'s 32, 33 & 34 sent to Judge Gants in Middlesex |
| 03/16/2004 | 35.0 | ORDERED: on defendant's motion to return forfeited bail (DENIED) (See Order) (Gants, Justice) (copy sent to deft) |
| 06/02/2004 | 36.0 | General correspondence regarding the general operation of the Appeal Court |
| 07/14/2004 | 37.0 | ORDERED: That the judgement imposing said sentence stand and that said appeal be and is hereby dismissed (Received from the Appellate Division date 5/11/04 |
| 07/14/2004 | 38.0 | General correspondence regarding appeals court docket sheet (sent deft a copy his docket sheet and the order from the appeal court regarding his appeal |

### EVENTS

| Date | Session | Event | Result |
|------|---------|-------|--------|
| 01/13/1997 | Crim 1 (204 Worcester) | Arraignment | Event held as scheduled |



96-0666 _ )

# Commonwealth of Massachusetts

WORCESTER, S.S.

*Superior Court Department of the Trial Court, holden at*                    *Worcester,*

*within and for the County of Worcester, for the transaction of criminal business, on*

*the*    First                    *Monday of*    December

*in the year of our Lord one thousand nine hundred and*    ninety-six

## The Jurors for the Commonwealth aforesaid, on their Oath Present

**THAT**    Julio Guerrero

of    Leominster                 in said County of Worcester,

on the    eighth                 day of    September        in the year of
our Lord one thousand nine hundred and    ninety-six

at    Leominster                 in said County of Worcester,

did knowingly or intentionally, unlawfully manufacture, distribute, dispense or possess

with intent to manufacture, distribute or dispense or bring into the Commonwealth 200

grams or more of Cocaine, a controlled substance as defined in Chapter 94C of the

General Laws.

A true copy by photostatic process
Attest:
    Asst. Clerk *Jarin M Golden*

A true bill.

*Kimberly Q Duxii*
*Foreman.*

*Asst. District Attorney.*

R.6

96-0666 - 2

# Commonwealth of Massachusetts

WORCESTER, S.S.

*Superior Court Department of the Trial Court, holden at*      *Worcester,*

*within and for the County of Worcester, for the transaction of criminal business, on*

*the*    First        *Monday of*     December

*in the year of our Lord one thousand nine hundred and*    ninety-six

**The Jurors for the Commonwealth aforesaid, on their Oath Present**

**THAT**     Julio Guerrero

of    Leominster        in said County of Worcester,

on the   eighth        day of    September      in the year of
our Lord one thousand nine hundred and    ninety-six

at    Leominster        in said County of Worcester,

did knowingly or intentionally, unlawfully possess, a controlled substance, to wit:

Heroin.

A true copy by photostatic process
Attest:
    Asst. Clerk

       *Kevin M Goldberg*

A true bill.

*District Attorney.*

*Foreman.*

R.7

96-0666 - 3

# Commonwealth of Massachusetts

WORCESTER, S.S.

*Superior Court Department of the Trial Court, holden at* Worcester,

*within and for the County of Worcester, for the transaction of criminal business, on*

*the* First *Monday of* December

*in the year of our Lord one thousand nine hundred and* ninety-six

**The Jurors for the Commonwealth aforesaid, on their Oath Present**

## THAT Julio Guerrero

of Leominster in said County of Worcester,

on the eighth day of September in the year of
our Lord one thousand nine hundred and ninety-six

at Leominster in said County of Worcester,

did have in his possession a falsely made, altered, forged or counterfeited license to

operate motor vehicles, the said Julio Guerrero well knowing the said license to be

falsely made, altered, forged or counterfeited in violation of G.L. chapter 90, section 24B.

A true copy by photostatic process
Attest:
        Asst. Clerk
        *Kevin M Golden*

A true bill.

*Asst. District Attorney.*

*Kimberly Q Jussi*
*Foreman.*

R.8

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

WORCESTER SUPERIOR COURT
DOCKET NO. WOCR1996-00666

COMMONWEALTH

v.

JULIO GUERRERO

NOTICE OF APPEAL
OF MOTION FOR RECONSIDERATION

Notice is hereby given that the defendant in the above-captioned case, being aggrieved by certain opinions, rulings, directions, and judgments of the Court including the denial of his motion for reconsideration of his motion for new trial, hereby appeals pursuant to the Massachusetts Rules of Appellate Procedure, Rule 3.

JULIO GUERRERO,
By his attorney,

Dated: September 19, 2002

David J. Barend, Esq.
2 Stonewood Circle
North Attleboro, MA 02760
(508) 316-1171
BBO# 564032

R. 9

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

**SUPERIOR COURT**
**CIVIL ACTION**
**NO. 96-0666**

### COMMONWEALTH OF MASSACHUSETTS,

vs.

### JULIO GUERRERO,
**Defendant**

### ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION

The defendant, Julio Guerrero, has moved for reconsideration of this Court's denial of

his second motion for a new trial on June 17, 2001. The motion to reconsider is **DENIED**.

Even if the trooper saw the second license plate on the dashboard before he asked for a

driver's license, the trooper still had reasonable suspicion cause to believe that a violation of

G.L. c. 90, § 6 had occurred and was justified in asking for a driver's license. This Court did not

rest its conclusion that the motion to suppress was unlikely to prevail on the trooper's good faith

in stopping the vehicle and asking for a license; rather, it rested its conclusion on the presence of

reasonable suspicion. Nothing in this motion justifies reconsideration of this Court's denial of

the motion for new trial.

Ralph D. Gants
Justice of the Superior Court

Dated: September 10, 2002

COPIES SENT
TO: DA & atty Barend
9-12-02 KJ

1

R.10

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                          SUPERIOR COURT DEPARTMENT
                                        OF THE TRIAL COURT
                                        CRIMINAL NO. 96-0666(1-3)


| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS | ) COMMONWEALTH'S |
| | ) MEMORANDUM IN |
| | ) OPPOSITION TO |
| V. | ) DEFENDANT'S SECOND |
| | ) MOTION FOR NEW TRIAL |
| JULIO GUERRERO aka | ) AND MOTION TO |
| RINALDO ARIAS | ) RECONSIDER |
| | ) |


While performing a routine patrol at 1:30 a.m. on September 8, 1996, Trooper

Cordero approached a blue 1987 Buick Sedan on Route 2 in Leominster. (Tr.11).[1] The

trooper observed Massachusetts registration number 732WYN in white and red lettering

on the rear license plate of this vehicle. (Tr.11). As he passed the car, Trooper Cordero

noticed that it had no front license plate displayed. (Tr.11) The trooper then positioned

his marked cruiser behind the vehicle and signaled for it to pull over. (Tr.11).

Once the driver complied, Trooper Cordero approached the vehicle. (Tr.11).

While doing so, he noticed only one person in the vehicle. (Tr.11) He also observed a

license plate resting on the dashboard facing upward. (Tr.11). Trooper Cordero then

asked the driver for his license and registration. (Tr.11).

The driver produced a license bearing his photograph in the name of Julio

Guerrero. (Tr.12). The license also indicated that Mr. Guerrero had been born in 1960

---

[1] The "Facts" are based on the information presented to the Court by the Commonwealth during Mr.
Guerrero's October 14, 1999 plea hearing. The transcript from that hearing will be cited as (Tr.).

and stood six feet tall. (Tr.12). Trooper Cordero believed Mr. Guerrero to be substantially

younger and shorter than the description on his license. (Tr.12). The trooper asked Mr.

Guerrero to state his age. (Tr.12). Mr. Guerrero replied that he was born in 1960. (Tr.12).

Trooper Cordero repeated his inquiry in Spanish. (Tr.12). After a prolonged delay, Mr.

Guerrero repeated that he was thirty-six years old. (Tr.12). He then agreed to step from

his vehicle and Trooper Cordero estimated the man's actual height at five feet, six inches.

(Tr.12).

Mr. Guerrero subsequently provided Trooper Cordero with consent to look inside

the car. (Tr.13). The trooper saw a plastic package that appeared to be "pre-bagged"

heroin on the front seat. (Tr.13). Trooper Cordero also noticed a plastic bag containing a

white substance protruding from a hole in front of the driver's seat. (Tr.13). At that point

he placed Mr. Guerrero under arrest. (Tr.13). A thorough search of the hole in the vehicle

revealed sixteen plastic bags containing over 100 grams of cocaine as well as $1738.25 in

U.S. currency. (Tr.13). The plastic package found on the front seat proved to contain 0.1

grams of heroin. (Tr.14).

Upon arriving at the police station, Trooper Cordero booked Mr. Guerrero.

(Tr.14). During the booking, Mr. Guerrero's pager "began reporting a series of telephone

numbers." (Tr.14). Trooper Cordero called one of the numbers and had a conversation

with a Spanish speaking male. (Tr.14). The man said that he saw "Nanino" stopped by

the State Police on Route 2. (Tr.14). The Spanish speaking male went on to state, "But

that thing is well secured, right? They're not going to find it; right? . . . Because he

always brings me something; we cut it here. I don't need any right now. I am his friend."

(Tr.14).

On December 11, 1996, indictments issued against Mr. Guerrero on the charges of trafficking in cocaine, possession of heroin, and falsifying a license. Mr. Guerrero obtained the services of Attorney Lawrence Perlmutter and pled not guilty on January 13, 1997. Attorney Perlmutter filed a motion to suppress and dismiss on March 19, 1997. Two days later, Mr. Guerrero defaulted on the hearing date for these motions.

Defendant remained in default until September 3, 1999 when he appeared in Worcester Superior Court following the discovery that he was then serving a sentence in the Billerica House of Correction under the name of Rinaldo Arias. On September 10, 1999 defendant appeared in Worcester Superior Court with new counsel, Attorney Desmond Fitzgerald, who had filed his appearance in the matter. On that date defendant acknowledged his true identity as Rinaldo Arias.

Following plea negotiations, a change of plea hearing was held before Judge Gants on October 14, 1999. At that time defendant admitted to the facts presented by the Commonwealth and entered pleas of guilty to the following offenses:

- Trafficking in Cocaine in an amount exceeding 100 grams but less that 200 grams,
- Possession of Heroin, and
- Possession of an altered or counterfeit Massachusetts operator's license.

Following the acceptance of defendant's guilty pleas by Justice Gants of the Superior Court, defendant was sentenced to concurrent terms of not less than 10 nor more than 12 years at MCI Cedar Junction, on the Trafficking charge; not less than 3 years nor

R.13

more than 5 years at MCI Cedar Junction, on the Altered License charge; and 1 year in

the House of Correction on the Heroin charge. The sentences, which were to be served

forthwith and notwithstanding the House of Correction sentence then being served by

defendant, were jointly recommended by the Commonwealth and defense counsel.

Defendant has now filed a Motion for New Trial Pursuant to **Mass. R. Crim. P.**

**30** alleging ineffective assistance of counsel. The Commonwealth maintains that

defendant's claim is without merit and that defendant's motion should be denied without

a hearing.

## ARGUMENT

Defendant's claim that the stop of his motor vehicle was unlawful is without

merit. "Where police have observed a traffic violation, they are warranted in stopping a

vehicle." **Commonwealth v. Robles, 48 Mass. App. Ct. 490, 493 (2000)**. Such a stop

may be initiated where an officer believed that a motorist's vehicle failed to display a

valid registration plate. **Standifird v. Town of Boxborough, 84 F. Supp. 2d 213 (D.**

**Mass. 2000) affirmed as modified 230 F. 3d 1347.**

In the instant case the trooper determined by his observations of the rear number

plate, that the vehicle operated by the defendant had been issued two such plates and he

was therefore justified in stopping the vehicle upon noting the absence of the front

number plate in violation of **M.G.L.A Chapter 90, section b.**

Although the trooper discovered upon reaching the driver's door that the second number plate issued to the vehicle was resting upon the dashboard this cannot be viewed as complying with the mandates of the statute because the number plate was not "conspicuously displayed" in such a fashion so as to make it easily seen by fellow motorists or pedestrians. See **Evans v. Rice, 238 mass. 318 (1921)**. The statute clearly requires that the second number plate issued to the vehicle be "attached at the front' of the motor vehicle and it is equally clear that setting the plate on top of the dashboard facing the sky does not comply with either the language or the purpose of the statute which in part is to allow those injured by a motor vehicle to "ascertain easily the name of the owner of such vehicle." **8 Op. Atty. Gen. 1927, p. 336**.

Thus, it is clear that the stop of the motor vehicle was warranted in the instant case. Although the production of a valid license and registration by the defendant should have, and in all probability would have, ended the encounter the defendant's production of a patently false driver's license warranted further inquiry by the trooper. See **Commonwealth v. Heon, 44 Mass. App. Ct. 254, 256 rev. den. 427 Mass. 1104 (1998); Commonwealth v. Rivera, 33 Mass. App. Ct. 311, 314 (1992)** as well as making the defendant subject to arrest without a warrant for possession of a false license, a felony defined **in M.G.L.A. Chapter 90, Section 24b**. See **Commonwealth v. Holmes, 344 Mass. 524 (1962); Commonwealth v. Andrews, 358 Mass. 721 (1971)**.

It was during this further inquiry that the trooper observed the packet of heroin on the front seat which gave him probable cause to search the vehicle without a warrant; See **Commonwealth v. Miller, 366 Mass. 387, 389 (1974); Commonwealth v. Allain, 36 Mass. App. Ct. 595, 602 (1994) and Commonwealth v. Motta, 424 Mass. 117, 124**

R.15

(1997). This search lead to the discovery of some 479.51 grams of 49% cocaine and $1,738.25 in U.S. currency, the defendant's arrest on trafficking charges and the development of further incriminating evidence.

Thus, there was no legitimate search and seizure issue to be litigated in this case and defense counsel cannot be held to be ineffective for not raising it. Moreover, in the instant case, even assuming, for the sake of argument, the existence of a viable search and seizure issue; in exchange for the defendant's waiver of his right to raise such an argument the defendant was allowed to plead to a lesser included offense which resulted in the reduction of the mandatory portion of the potential 20 year sentence from 15 to 10 years. The defendant bargained for this reduction and for an agreed sentence of 10 to 12 years and should not now be allowed to renege on the agreement.


## CONCLUSION

Based upon the forgoing arguments it is clear that defendant has failed to make the required showing "that justice may not have been done" in this case. To conclude otherwise would be to, "acquiesce in and invite opportunistic and mischievous manipulation of the plea process" and to disregard "the community's interest in finality, which insures the integrity and predictability of [court] procedures and is of special weight in regards to convictions on guilty pleas." **Commonwealth v. Pingaro**, 44 Mass. App. Ct. 41, 55 (1997). See **Commonwealth v. Nolan**, 19 Mass. App. Ct. 491, 495-496 & NN. 6-7 (1985). Because defendant has failed to raise a substantial issue his motion for new trial should be denied without an evidentiary hearing. See **Commonwealth v.**

R.16

<u>Croken</u>, 432 Mass. 266, 270 (2000), citing <u>**Commonwealth v. Stewart**</u>, 383 Mass. 253, 257-258 (1981).

Respectfully submitted,

DONALD H. PROGEN
Assistant District Attorney
Middle District
for the Commonwealth

R.17

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS                         WORCESTER SUPERIOR COURT
                                      # WOCR1996-0666


COMMONWEALTH

V.

JULIO GUERRERO


## MOTION FOR RECONSIDERATION OF
## MOTION FOR NEW TRIAL


Now comes the defendant, Julio Guerrero, and moves this Honorable Court
pursuant to M.R.Crim.P. 30 to reconsider his motion to withdraw his guilty plea and receive
a new trial. As grounds therefor, the defendant asserts that Judge Gants misapplied the
undisputed facts concerning when Trooper Cordero obtained Mr. Guerrero's driver's
license. Further, Judge Gants may have upheld the initial stop of Mr. Guerrero by applying
a "good faith" exception to the exclusionary rule which has yet to be accepted by the
Supreme Judicial Court. See Commonwealth v. Censullo, 40 Mass. App. Ct. 65, 66
(1996). A memorandum of law and an affidavit are attached. The defendant requests an
evidentiary hearing on this motion.


Dated: August 29, 2002


                                      Respectfully Submitted,
                                      Julio Guerrero
                                      By his Attorney,


                                      _____
                                      David Barend, Esq.
                                      2 Stonewood Circle
                                      North Attleboro, MA 02760
                                      (508) 316-1171
                                      BBO#564032


R.18

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS

WORCESTER SUPERIOR COURT
# WOCR1996-0666

COMMONWEALTH

V.

JULIO GUERRERO

## MEMORANDUM IN SUPPORT OF
## MOTION FOR RECONSIDERATION OF
## MOTION FOR NEW TRIAL

### INTRODUCTION

On or about June 18, 2002, Judge Gants denied Mr. Guerrero's motion for new trial.
Although Mr. Guerrero promptly filed a notice of appeal, he now moves for reconsideration
of Judge Gant's decision. Specifically, Mr. Guerrero believes that his Honor misapplied the
undisputed facts concerning when Trooper Cordero obtained Mr. Guerrero's driver's
license. Further, Judge Gants may have upheld the initial stop of Mr. Guerrero by applying
a "good faith" exception to the exclusionary rule which has yet to be accepted by the
Supreme Judicial Court.

### ARGUMENTS

I. Judge Gants may have reversed the temporal order of undisputed facts.

On page five of his opinion, Judge Gants stated, "Since the trooper had
reasonable suspicion (indeed, probable cause) to believe that the driver's license Guerrero
produced was not valid, he was plainly justified in prolonging the stop even after he
observed the second license plate on the dashboard. The legal basis for the stop may
have changed from driving without the required license plates to driving without a valid
driver's license, but it was still legally sufficient in prolong the stop." This language indicates
that the judge concluded that were it not for the information obtained from the driver's
license, Trooper Cordero would have had no basis to continue to detain Mr. Guerrero once

he saw the second license plate.

The information on Mr. Guerrero's driver's license could not, however, justify prolonging the stop if the trooper obtained the driver's license after he noticed the second license plate. According to Florida v. Royer, 46 U.S. 491, 500 (1983), "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Thus, if Trooper Cordero had noticed the second license plate and thereby "effectuated the purpose of the stop" before he obtained Mr. Guerrero's driver's license, the detention lasted longer than necessary mandating the suppression of all subsequently discovered evidence. Id.

During his presentation of the facts at the plea hearing, the prosecutor stated, "When the trooper reached the door of the vehicle, he observed a license plate resting on the dashboard facing upward. He asked the defendant for a license and registration." (Tr 11). This clearly reveals that Judge Gants must have reversed the order of these events. His decision must, therefore, also be reversed.

II. Trooper Cordero's initial stop cannot be justified by his "good faith" belief that he witnesses an infraction of G.L. c. 90 Sec. 6.

According to Judge Gant's decision, "the trooper was justified in believing that two license plates had been issued, and that the driver of the vehicle was in violation of G.L. c.90 Sec. 6. Consequently, he was permitted to stop the vehicle." (Decision, page 5). The judge seems to have held that merely believing that a vehicle has violated G.L. c.90 Sec. 6 constitutes sufficient grounds for a trooper to stop that vehicle. A good faith, but mistaken, belief that a defendant has committed a traffic violation is, however, insufficient to justify stopping that defendant. See Commonwealth v. Rosenthal, 52 Mass. App. Ct. 707, 716, n.11 citing Commonwealth v. Censullo, 40 Mass. App. Ct. 65, 66 (1996). Thus, Mr. Guerrero must have actually failed to comply with G.L. c.90 Sec. 6 for the stop to be considered legal.

At no point in his decision did Judge Gants indicate that Mr. Guerrero contravened the mandates of G.L. c.90 Sec. 6 by driving a vehicle with a license plate on the dashboard. The Commonwealth may disagree and rely on page 4 of the judge's decision

where he wrote, "Under G.L. c.90 Sec. 6, every motor vehicle must conspicuously display both number plates, if two are issued, one at the front and one at the rear." This could be misinterpreted as a conclusion that Mr. Guerrero's failure to "conspicuously display" the front license plate resulted in a violation of G.L. c.90 Sec. 6.[1] It is extremely unlikely that Judge Gants intended such a conclusion given that it is wholly unsupported by the language of G.L. C.90 Sec. 6. A careful reading of that statue reveals that it does not require that the front license plate be conspicuously displayed, but only that the numbers on the plate itself be conspicuously displayed.

More importantly, the judge's reasoning on the following page of his decision, evidences a determination that the license plate on the dashboard complied with G. L. C.90 Sec. 6. As mentioned in the previous argument section of this memorandum, the judge found that after Trooper Cordero examined Mr. Guerrero's driver's license, the trooper "was plainly justified in prolonging the stop even after he observed the second license plate on the dashboard." The only conclusion consistent with this language is that Judge Gants found that the license plate on the dashboard satisfied the purposes of G.L. C.90 Sec. 6. Such a finding, combined with the lack of a "good faith" exception, deletes any justification for the initial stop. Commonwealth v. Censullo, 40 Mass. App. Ct. 65, 66 (1996). All the evidence later discovered must, therefore, be suppressed. Id.

Respectfully submitted,
Julio Guerrero
By his attorney

David J. Barend
2 Stonewood Circle
North Attleboro, MA 02760
(508) 316-1171
BBO# 564032

[1] Obviously defense counsel does not know for certain whether the Commonwealth would make this argument. This is especially true given that the Commonwealth has not filed a memorandum in opposition to Mr. Guerrero's motion for new trial. Judge Gants, however, referred to the Commonwealth's position in two separate parts of his decision. Should this motion for reconsideration be denied, the defense would need to know how and when Judge Gants received this information in order to properly file an appeal.

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS                          WORCESTER SUPERIOR COURT
                                       # WOCR1996-0666


COMMONWEALTH

V.

JULIO GUERRERO

AFFIDAVIT IN SUPPORT OF
MOTION FOR RECONSIDERATION OF
MOTION FOR NEW TRIAL

I, David J. Bareno, attorney for Julio Guerrero, state the following to be true and accurate to the best of my knowledge and belief:

1.    On page 4 of Judge Gant's decision denying Mr. Guerrero's motion for new trial he states, "Under G. L. c.90 Sec. 6, every motor vehicle must conspicuously display both number plates, if two are issued, one at the front of the car and one at the rear."

2.    On page 5 of Judge Gant's decision denying Mr. Guerrero's motion for new trial he states that "the trooper was justified in believing that two license plates had been issued, and that the driver of the vehicle was in violation of G.L. c.90, Sec. 6.  Consequently, he was permitted to stop the vehicle."

3.    On page 5 of Judge Gant's decision denying Mr. Guerrero's motion for new trial he states, "Since the trooper had reasonable suspicion (indeed, probable cause) to believe that the driver's license Guerrero produced was not valid, he was plainly justified in prolonging the stop even after he observed the second license plate on the dashboard. The legal basis for the stop may have changed from driving without the required license plates to driving without a valid driver's license, but it was still legally sufficient to prolong the stop."

4.    Page 11 of the transcript of Mr. Guerrero's plea hearing reveals that the prosecutor stated, "When the trooper reached the door of the vehicle, he observed a license plate resting on the dashboard facing upward.  He asked the defendant for a license and registration."


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 29th DAY OF AUGUST, 2002.

David J. Bareno
2 Stonewood Circle
North Attleboro, MA 02760
(508) 316-1171
BBO# 564032

R22

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

WORCESTER SUPERIOR COURT
DOCKET NO. WOCR1996-00666

COMMONWEALTH

v.

JULIO GUERRERO

## NOTICE OF APPEAL

Notice is hereby given that the defendant in the above-captioned case, being aggrieved by certain opinions, rulings, directions, and judgments of the Court including the denial of his motion for new trial, hereby appeals pursuant to the Massachusetts Rules of Appellate Procedure, Rule 3.

JULIO GUERRERO,
By his attorney,

Dated: June 27, 2002

David J. Barend, Esq.
2 Stonewood Circle
North Attleboro, MA 02760
(508) 316-1171
BBO# 564032

R.23

## COMMONWEALTH OF MASSACHUSETTS

**WORCESTER, ss.**

**SUPERIOR COURT
CIVIL ACTION
NO. 96-0666**

### COMMONWEALTH OF MASSACHUSETTS,

#### vs.

### JULIO GUERRERO,
### Defendant

### ORDER ON DEFENDANT'S MOTION FOR A NEW TRIAL

The defendant, Julio Guerrero, has moved yet again for a new trial under Mass. R. Crim.

P. 30, seeking to withdraw his guilty plea because he claims that his attorney was ineffective by

failing to move to suppress the fruits of his traffic stop. For the reasons stated below, no

substantial issue is raised by the motion and, therefore, under Mass. R. Crim. P. 30(c)(3), it is

denied without a hearing.

On September 8, 1996, Guerrero was driving alone in his car down Route 2 in Leominster

when a state trooper observed that he had no front license plate, as was required for that vehicle,

and stopped the vehicle. Guerrero produced a fraudulent driver's license which described him as

six feet tall and declared that he was born in 1960; Guerrero was roughly 5 feet, 6 inches tall and

looked substantially younger. Guerrero consented to a search of his car, and the trooper quickly

spotted what he recognized to be pre-bagged heroin in the front seat. The state trooper then saw

a metal plate covering a hole in the carpet, and protruding from the hole was a clear plastic bag

containing what turned out to be nearly 480 grams of 49% pure cocaine. As a result of this

discovery, Guerrero was placed under arrest. At booking, a pager was found on his person,

1

COPIES SENT
TO: DA data K,
Barend 6-21

which indicated that he had just been paged numerous times from a Fitchburg telephone number. The trooper, who spoke fluent Spanish, telephoned the number that had been calling, and the person on the other line said that the State Police had stopped "Nanneno" on Route 2. The person asked if the "thing" was well secured, and received assurances that "they" would not find it. The person on the other line was relieved because, as he explained, "he" always brings me something and we cut it here.

As a result of these events, Guerrero was indicted by the grand jury in December 1996 and charged with trafficking in more than 200 grams of cocaine, possession of an altered driver's license, and possession of heroin. The defendant made bail, but failed to appear at a hearing on the motion to suppress on March 21, 1997, and a default warrant issued. Guerrero remained on the lam until September 3, 1999, when he was brought before the Court and a substantially higher bail was set. On September 10, 1999, a new attorney, Desmond Fitzgerald, filed his appearance on Guerrero's behalf.

On October 14, 1999, after negotiations with the District Attorney, the defendant entered into an agreed-upon plea agreement in which, in return for his plea of guilty to all indictments, the Commonwealth agreed:

- to amend the trafficking indictment to allege an amount of only 100-200 grams, which reduced the mandatory minimum sentence from 15 years in prison to 10 years;
- to recommend a sentence of 10-12 years in state prison on the amended trafficking indictment, 3-5 years in state prison on the altered driver's license indictment, and one year in the House of Correction on the possession of heroin indictment, all to be served concurrently with each other; and

2

R.25

to recommend that this sentence be served forthwith. This latter recommendation was significant because the defendant at the time of his plea was serving sentences in the House of Correction for indecent assault and battery and a narcotics offense which had a projected parole eligibility date of January 7, 2001 and a wrap-up date of January 3, 2003. The forthwith recommendation, if imposed by the Court, meant that the balance of his House of Correction time would be deemed concurrent with his state prison sentence, and this time would be spent in state prison.[1]

A complete plea colloquy was given to the defendant, at which he told the Court that he understood the plea agreement, knew his rights, and still wished to plead guilty in accordance with the agreement. He also was specifically asked if he was aware that, by pleading guilty, he was giving up his right to file or have heard any motions to suppress or dismiss, and he answered that he understood this and still wished to plead guilty. He also was specifically asked if he was satisfied with the advice and representation he had been provided by his attorney, and he said he was. After the plea colloquy, the Court accepted the defendant's guilty plea and imposed the sentence that all parties had agreed upon.

The defendant now moves for a new trial, claiming that he should be allowed to withdraw his guilty plea because of the ineffective assistance of counsel. He contends that his attorney should have insisted upon a hearing on his motion to suppress, and that this motion would have succeeded in suppressing the narcotics found in his vehicle.

---

[1]    Although not mentioned at the change of plea hearing, the Commonwealth now says that it also promised not to charge the defendant with bail jumping. If such an indictment had been brought, as it surely could have in view of the evidence, the defendant would have faced a maximum of five additional years in prison, and any time to be served, as a matter of law, must be served on and after the completion of his trafficking sentence.

3

In evaluating a claim of ineffective assistance of counsel, this Court must make "a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel--behavior of counsel falling measurably below they which might be expected from an ordinary fallible lawyer--and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Here, Guerrero's claim of ineffective assistance of counsel cannot succeed unless he can demonstrate that his motion to suppress likely would have been granted. It is plain from the undisputed facts of this case that the motion to suppress would not have been granted.

Guerrero contends that the police lacked a reasonable basis to stop his vehicle. The Commonwealth does not contend that, when the state trooper stopped Guerrero's car, the trooper had a reasonable suspicion that the occupant of the vehicle had committed, was committing, or was about to commit a crime. See Commonwealth v. Alvarado, 423 Mass. 266, 268 (1996). Rather, the Commonwealth contends that the trooper was authorized to stop Guerrero's car because he had observed a traffic violation -- the failure to display two license plates, in violation of G.L. c. 90, § 6. See Commonwealth v. Torres, 433 Mass. 669, 673 (2001); Commonwealth v. Santana, 420 Mass. 205, 207 (1995) ("Where the police have observed a traffic violation, they are warranted in stopping a vehicle"), quoting Commonwealth v. Bacon, 381 Mass. 642, 644 (1980).

Under G.L. c. 90, § 6, every motor vehicle must conspicuously display both number plates, if two are issued, one at the front of the car and one at the rear. G.L. c. 90, § 6. The Registrar of Motor Vehicles ("the Registrar"), however, is permitted to issue only one license

4

R.27

plate, which must be displayed at the rear of the car. G.L. c. 90, §§ 6 and 6B. Therefore, it is a violation of law not to display a license plate at the front of one's car only if the Registrar has issued two license plates to that car. Guerrero concedes in his motion that two plates had indeed been issued to this car. Therefore, the trooper was justified in believing that two license plates had been issued, and that the driver of the vehicle was in violation of G.L. c. 90, § 6. Consequently, he was permitted to stop the vehicle. See Commonwealth v. Santana, 420 Mass. at 207.

The trooper, after stopping the vehicle, was permitted to ask Guerrero to produce a valid driver's license and registration. Since the trooper had reasonable suspicion (indeed, probable cause) to believe that the driver's license Guerrero produced was not valid, he was plainly justified in prolonging the stop even after he observed the second license plate on the dashboard. The legal basis for the stop may have changed from driving without the required license plates to driving without a valid driver's license, but it was still legally sufficient to prolong the stop. Since the trooper had a legal basis to continue to detain Guerrero when he asked for and received Guerrero's permission to search the vehicle, there was no valid ground to suppress the consent search.

Since Guerrero's counsel had no reason to believe he would prevail in his motion to suppess, there is no evidence presented to indicate that counsel was incompetent in his representation of Guerrero. The Commonwealth had a strong case of trafficking in more than 200 grams of cocaine and was likely to prevail both in the motion to suppress and at trial on this indictment, which would have resulted in a sentence of at least 15 years. Moreover, this sentence easily could have been imposed to commence on and after the completion of his unrelated House

5

of Correction sentence, which likely would have meant that the 15 years would not commence until January 3, 2003, since the defendant was a poor candidate for parole from his House of Correction sentence. In short, if he had gone to trial and received only the mandatory minimum sentence, he likely would be in prison until 2018. By pleading guilty , he could be released, if paroled, by 2009, and will surely be released no later than 2011. Encouraging the defendant to accept this plea offer hardly constitutes incompetence under the circumstances of this case.

For the reasons stated above, this Court finds that no substantial issue is raised by the motion for new trial and, therefore, under Mass. R. Crim. P. 30(c)(3), it is **DENIED** without a hearing.

Ralph D. Gants
Justice of the Superior Court

Dated: June 17, 2001

# FILED

JUN 1 8 2002

ATTEST:

CLERK

6

R.29

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS

WORCESTER SUPERIOR COURT
# WOCR1996-0666

### COMMONWEALTH

V.

### JULIO GUERRERO

### MOTION FOR NEW TRIAL

Now comes the defendant, Julio Guerrero, and moves this Honorable Court pursuant to M.R.Crim.P. 30 to withdraw his guilty plea and order a new trial. As grounds therefor, the defendant asserts that he was provided with ineffective assistance of counsel. See Commonwealth v. DiPietro, 35 Mass. App. Ct. 638 (1993) FAR denied (1994). Specifically he alleges that his counsel was ineffective for failing to move to suppress all the evidence discovered by Trooper Cordero as a result of an illegal stop. A memorandum of law and an affidavit are attached. Commonwealth v. Wren, 391 Mass. 703, 707 (1984). The defendant requests an evidentiary hearing on this motion.

Dated: June 12, 2002

Respectfully Submitted,
Julio Guerrero
By his Attorney,

David Barend, Esq.
2 Stonewood Circle
North Attleboro, MA 02760
(508) 316-1171
BBO#564032

R.30

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS

WORCESTER SUPERIOR COURT
# WOCR1996-0666

COMMONWEALTH

V.

JULIO GUERRERO

## MEMORANDUM IN SUPPORT OF
## MOTION FOR NEW TRIAL

### FACTS

While performing a routine patrol at 1:30 a.m. on September 8, 1996, Trooper Cordero approached a blue 1987 Buick Sedan on Route 2 in Leominster. (Tr.11).[1] The trooper observed Massachusetts registration number 732WYN in white and red lettering on the rear license plate of this vehicle. (Tr.11). As he passed the car, Trooper Cordero noticed that it had no front license plate displayed. (Tr.11). The trooper then positioned his marked cruiser behind the vehicle and signaled for it to pull over. (Tr.11).

Once the driver complied, Trooper Cordero approached the vehicle. (Tr.11). While doing so, he noticed only one person was in the vehicle. (Tr.11). He also observed a license plate resting on the dashboard facing upward. (Tr.11). Trooper Cordero then asked the driver for his license and registration. (Tr.11).[2]

The driver produced a license bearing his photograph in the name of Julio Guerrero. (Tr.12). The license also indicated that Mr. Guerrero had been born in 1960 and stood six feet tall. (Tr.12). Trooper Cordero believed Mr. Guerrero to be substantially younger and

---

[1] The "Facts" are based on the information presented to the Court by Assistant district Attorney Progen during Mr. Guerrero's October 14, 1999 plea hearing. The transcript from that hearing will be cited as (Tr.).

[2] Trooper Cordero's police report states, "On above date and time while on patrol in marked state police cruiser #2665 on route 2 Westbound in Leominster, I observed above vehicle traveling behind my cruiser with no front plate on its front bumper. The plate was instead placed on the dashboard of the vehicle facing upward. The vehicle was stopped and the operator was approached and asked to produce a license and registration."

shorter than the description on his license. (Tr.12). The trooper asked Mr. Guerrero to state his age. (Tr.12). Mr. Guerrero replied that he was born in 1960. (Tr.12). Trooper Cordero repeated his inquiry in Spanish. (Tr.12). After a prolonged delay, Mr. Guerrero repeated that he was thirty-six years old. (Tr.12). He then agreed to step from his vehicle and Trooper Cordero estimated the man's actual height at five feet, six inches. (Tr.12).

Mr. Guerrero subsequently provided Trooper Cordero with consent to look inside the car. (Tr.13). The trooper saw a plastic package that appeared to be "pre-bagged" heroin on the front seat. (Tr.13). Trooper Cordero also noticed a plastic bag containing a white substance protruding from a hole in front of the driver' seat. (Tr.13). At that point he placed Mr. Guerrero under arrest. (Tr.13). A thorough search of the hole in the vehicle revealed sixteen plastic bags containing over 100 grams of cocaine as well as $1738.25 in U.S. currency. (Tr.13). The plastic package found on the front seat proved to contain 0.1 grams of heroin. (Tr.14).

Upon arriving at the police station, Trooper Cordero booked Mr. Guerrero. (Tr.14). During the booking, Mr. Guerrero's pager "began reporting a series of telephone numbers." (Tr.14). Trooper Cordero called one of the numbers and had a conversation with a Spanish speaking male. (Tr.14). The man said that he saw "Nanino" stopped by the State Police on Route 2. (Tr.14). The Spanish speaking male went on to state, "But that thing is is well secured, right? They're not going to find it, right? ... Because he always brings me something; we cut it here. I don't need any right now. I am his friend." (Tr.14).

On December 11, 1996, indictments issued against Mr. Guerrero on the charges of trafficking in cocaine, possession of heroin, and falsifying a license. Mr. Guerrero obtained the services of Attorney Lawrence Perlmutter and pled not guilty on January 13, 1997 Attorney Perlmutter filed a motion to suppress and dismiss on March 19, 1997. Two days later, Mr. Guerrero defaulted on the hearing date for these motions.

On September 3, 1999, this Court removed Mr. Guerrero's default. Attorney Desmond Fitzgerald entered his appearance on September 9, 1999. At no point did Attorney Fitzgerald reschedule Mr. Guerrero's motion for a hearing. On October 14, 1999. Mr. Guerrero pled guilty to all three charges. Judge Gants then sentenced him to serve 10-12 years at MCI Cedar Junction. On August 30, 2000, Mr. Guerrero filed a motion for determination of indigency and a motion for screening by C.P.C.S. Judge Gants allowed

both of these motions on January 17, 2001.

## ARGUMENT

### ATTORNEY FITZGERALD PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO MOVE TO SUPPRESS ALL THE EVIDENCE AGAINST MR. GUERRERO.

A. Introduction.

If, after pleading guilty, a defendant can demonstrate a likelihood that he would have prevailed on a motion to suppress, he has then established ineffective assistance for failing to file that motion and his plea must be withdrawn. Commonwealth v. DiPietro, 35 Mass. App. Ct. 638 (1993) FAR denied (1994). A determination that Trooper Cordero stopped the vehicle driven by Mr. Guerrero without reasonable suspicion would indicate that a motion to suppress would have been successful. Attorney Fitzgerald never filed a motion to suppress, nor did he reschedule the motion previously filed by Attorney Perlmutter. Thus, if this Court finds that Trooper Cordero conducted an illegal stop, Mr. Guerrero received ineffective assistance and a new trial must be granted.

B. Trooper Cordero did not know whether a "plate certificate" was within the vehicle's glove compartment before he stopped it for failing to have a plate attached to its front.

According to Commonwealth v. Wren, 391 Mass. 703, 707 (1984), "A police officer may stop a vehicle in order to conduct a threshold inquiry if he has reasonable suspicion that the occupants have committed, are committing or are about to commit a crime." Based on his belief that the vehicle driven by Mr. Guerrero needed to have a front license plate displayed, Trooper Cordero signaled for the car to pull over upon noticing the absence of that plate. (Tr.11). The trooper's observations did not, however, amount to a reasonable suspicion that a crime was being committed.

The mere absence of a front license plate does not, in and of itself, constitute a violation. Although M.G.L. c.90 Sec. 6 indicates that a car such as the one driven by Mr. Guerrero should have a plate attached to the front, seeing a car driven without a plate

attached to the front is insufficient to believe that a crime is being committed. M.G.L. C.90 Sec.6, also authorizes the registry to issue "temporary plates" to those who have lost their front license plate. Instead of issuing actual plates, however, the registry provides a "plate certificate" (a lost plate receipt) that is to be placed in the vehicle's glove compartment. A person can, therefore, legally operate a vehicle accompanied with a plate certificate with no front license plate attached. Thus, Trooper Cordero's observations were insufficient to establish reasonable suspicion that a crime was being committed. Although he noticed that the vehicle did not have a plate attached to its front bumper, he had no knowledge whether a plate certificate had been issued.

An analogous situation can be found in Commonwealth v. Toole, 389 Mass. 159 (1983). The officers in that case had probable cause to believe that the defendant had a gun in the cab of his trunk. Id. The Court, however, found that the gun discovered during their search needed to be suppressed. Id. at 163. The Supreme Judicial Court explained that carrying a gun is not, in and of itself, a crime. Id. Before the search could be conducted, the police also needed to have probable cause that the gun had not been licensed. Id. at 163. Similarly, driving with a front license plate is not necessarily a crime. Trooper Cordero needed to have reasonable suspicion that a plate certificate had not been issued to that vehicle before he could legally stop it. See also Commonwealth v. Couture, 407 Mass. 178 (1990). Given that the trooper had no such information, he conducted an illegal stop requiring all of the evidence discovered to be suppressed. See Commonwealth v. Balicki, 436 Mass. 1, 15-16 (2002).


C. A license plate was attached to the front of the vehicle driven by Mr. Guerrero.


Even if this Court disagrees with the above argument, the evidence discovered by Trooper Cordero must still be suppressed. According to the plea hearing transcript, Trooper Cordero noticed a license plate resting on the vehicle's dashboard facing upward. (Tr.11). At that point, Trooper Cordero had no justification under M.G.L. c.90 Sec. 6 to detain Mr. Guerrero. See Commonwealth v. Claramitaro, 51 Mass. App. Ct. 638, 643

(2001).

M.G.L. c.90 Sec. 6 states that "Every motor vehicle . . . registered under this chapter when operated in or on any way in this Commonwealth shall have its register number displayed conspicuously thereon by the number plates furnished by the registrar . . ., one number plate to be attached at the front and one at the rear of said motor vehicle, . . ., but if the registrar issues but one number plate it shall be attached to the rear of the vehicle so that it shall always be plainly visible."

Trooper Cordero did not report that Mr. Guerrero had committed any infraction with respect to his rear license plate. The facts, however, reveal that the registrar had furnished two plates fro the vehicle driven by Mr. Guerrero. The car, therefore, needed to have one of these plates "be attached at the front."

The only arguably relevant Massachusetts case is Commonwealth v. Kimball, 37 Mass. App. Ct. 604, 605-606 (1994). In that case the Appeals Court held that an officer did not notice a visible violation of the law although he witnessed a vehicle operating with its rear license plate askew and held by only one screw. Id. Obviously a license plate resting on a dashboard is more securely attached than the plate in Commonwealth v. Kimball, 37 Mass. App. Ct. at 605. an must, therefore, also be in compliance with M.G.L. c.90 Sec. 6.

This Court could look to Black's Law Dictionary, 5th ed., which defines "attached" as "the physical union of two otherwise independent structures or objects." During the plea hearing, the assistant district attorney stated that "Trooper Cordero observed a license plate resting on the dashboard facing upward." Although Commonwealth v. Kimball, seems to suggest differently, this Court might determine that a license plate resting on a dashboard does not comport with that definition of "attached". Such a finding can not, however, be the sole basis for a denial of this motion.

According to Commonwealth v. Licata, 412 Mass. 654 (1994), once a defendant in a motion for a new trial presents a substantial issue, his motion can not be denied without an evidentiary hearing. Mr. Guerrero's affidavit provides a substantial issue regarding whether the plate was "attached". Mr. Guerrero asserts in his affidavit that the prosecutor's statement concerning the license plate was accurate, but it contained insufficient detail. Mr. Guerrero swears under the pains and penalties of perjury that the plate not only rested on the dashboard, but had been wedged between the dashboard and the windshield. Mr.

Guerrero's affidavit, therefore, evidences that the plate was attached to the front of the car by creating a physical union between the plate, the dashboard, and the windshield. Thus, a decision by this Court that a plate merely resting on a dashboard is not "attached" can not be followed by a denial of this motion without an examination of Mr. Guerrero's affidavit and an evidentiary hearing.

This Court may also have concerns as to whether the dashboard satisfies the legislative intent for where the plate should be attached. M.G.L. c.90, Sec.6, however, provides no further specifics with respect to where the plate should be attached other than "at the front . . . of said vehicle." It would be hard to describe the dashboard as not being at the front of a motor vehicle.

According to Evans v. Rice, 238 Mass. 318, 321 (1921), the purpose of having license plates attached to a vehicle is to allow others to allow others to easily ascertain the name and address of the automobile s owner. This reflects the language of M.G.L. c.90 Sec.6 which indicates that the license plate "shall always be plainly visible." By having the license plate pressed up against the windshield, Mr. Guerrero indisputably satisfied the mandates of the case law and M.G.L. c.90 Sec 6's "plainly visible" requirement.

A careful reading of M.G.L. c.90 Sec 6 actually reveals that the "plainly visible" language only applies to a motor vehicle's rear license plate. There is further evidence within that statute suggesting that the legislature put a greater emphasis on the rear license plate than the front license plate. For example, a vehicle must have the capability of illuminating its rear license plate, but not its front license plate. In addition, there are still automobiles registered in Massachusetts that have been issued a rear plate but no front plate. These motor vehicles, as well as those with the above mentioned plate certificates do not even need a front license plate to operate legally. Thus, the legislature has clearly placed a lesser importance on the front license plate than on the rear license plate.

D. Conclusion

Mr. Guerrero did not violate M.G.L. c. 90 Sec 6 by driving an automobile with a license plate attached to its rear and another plate attached at the front by being wedged between the windshield and the dashboard. Therefore, Trooper Cordero did not have

R.36

reasonable suspicion to stop Mr. Guerrero for a violation of M.G.L. c.90 Sec.6 and all of the evidence should have been suppressed. Given that trial counsel failed to file a motion to suppress, this Court must enter a finding of ineffective assistance and order a new trial for Mr. Guerrero.

Respectfully submitted,
Julio Guerrero
By his attorney

David J. Barend
2 Stonewood Circle
North Attleboro, MA  02760
(508) 316-1171
BBO#  564032

R.37

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS                    WORCESTER SUPERIOR COURT
                                # WOCR1996-0666


COMMONWEALTH

V.

JULIO GUERRERO


<u>AFFIDAVIT IN SUPPORT OF
MOTION FOR NEW TRIAL</u>


I, Julio Guerrero, state the following to be true and accurate to the best of my knowledge and belief:

1.    The prosecutor's statement concerning the license plates at the October 14, 1999 plea hearing was accurate, but it contained insufficient detail.

2.    The license plate attached to the front of the vehicle that I was driving on September 8, 1996 was not merely resting on the dashboard.

3.     The license plate had actually been wedged between the dashboard and the windshield.

4.    This license plate was pressed flush against the windshield and faced forward.


SIGNED UNDER THE PAINS AND PEALITIES OF PERJURY THIS 5/6/9 DAY OF MAY, 2002.


_Julio Guerrero_
Julio Guerrero


R.38

**Station: SP LEOMINSTER**   Record Of Investigation   SP-12 (Rev. 2/94)

| Date & Time | Investigation Type | | X | Arrest | P.C. | | Crim | Case Number |
|---|---|---|---|---|---|---|---|---|
| 09-08-96 1330 HRS | NARCOTICS ARREST | | | A/R | | Complaint # | | 96-066-3533-0405 |

| Location - Scene or Route # | | City/Town | Court Location |
|---|---|---|---|
| ROUTE 2 WESTBOUND | | LEOMINSTER | LEOMINSTER DISTRICT |

| Last Name | First Name | M.I. | D.O.B. (mm/dd/yy) | Place Of Birth |
|---|---|---|---|---|
| GUERRERO | JULIO | | 06-15-60 | DOMINICAN REP. |

| Street Address | City/ State/ Zip Code | Telephone Number | Social Security Number |
|---|---|---|---|
| 338 PAWTUCKET STREET | LOWELL, MA | 508-970-2784 | NONE |

| Marital Status | Alias | Father's Full Name | Mother's (Maiden) | Spouse's (Maiden) |
|---|---|---|---|---|
| S | NANENO | GUERRERO, FRANCISCO | MORETA, GUILLERMINA | N/A |

| Sex | Age | Race | Hgt. | Wgt. | Hair | Eyes | Build | Complexion | # of Children | Peculiarities |
|---|---|---|---|---|---|---|---|---|---|---|
| M | 36 | H | 5'6" | 150 | BLK | BR | MED | TAN | 1 | SCAR/ BACK OF LEFT HAND & LEFT CALF |

| Trade/ Occupation | Employer/ School (Name & Address) | Subject Wanted? | Rights Advised By |
|---|---|---|---|
| UNEMPLOYED | N/A | NO | TPR CORDERO #2147 |

| Printed? | Photos Taken? | Taken By | Person/ Number Called If Phone Used | Desk Officer |
|---|---|---|---|---|
| YES | YES | TPR CORDERO | EVELYN 508-458-9481 | TPR FLAHERTY |

| Does Incident Involve Abuse As Defined In MGL ch 209A, §1? | NEG | | Reason For Custody----Offenses | M.G.L ch. 1 |
|---|---|---|---|---|

| Reason For Custody----Offenses | M.G.L. ch. 1 | | | |
|---|---|---|---|---|
| 1. TRAFFICKING CL. B (COCAINE) | 94C-32E | 3. POSS CL A (HEROIN) | 94C-34 | |
| 2. PROCURING RMV DOC. FALSE PRETENSE | 90-24B | 4. IMPROPER DISPLAY OF PLATES | 90-6 | |

| Oper. License # & State | Class | License Status | Expiration Date | Date Of Susp/ Revocation | Reason For Susp/ Rev |
|---|---|---|---|---|---|
| S08544876 MA | D | ACT | 06-15-98 | N/A | N/A |

| Vehicle Owner Of Different From Subject | Vehicle Registration & State | Year, Make | Issue Date |
|---|---|---|---|
| TORRES, TOMAS G. | 732-WYM MA | 87 BUICK | 03-18-96 |

| Vehicle Owner Address | Vehicle Identification Number | Type, Color | Expiration Date |
|---|---|---|---|
| 293 NESMITH ST, LOWELL, MA | 1G4HH5134HH422539 | SEDAN, BLUE | 2/98 |

| Date Reg Susp | Reason Susp/Rev | M/V Stolen? | Vehicle Towed By | M/V Inventory Attached? | Evidence Seized? |
|---|---|---|---|---|---|
| N/A | N/A | NO | QUALITY | YES | YES |

| BT Given By | | All Results | | | | Refusal | | Medication? If yes, What, When, How Much, Why |
|---|---|---|---|---|---|---|---|---|
| N/A | - | - | - | - | - | | NONE | |

| | | | | Bailed By / Released To | Person Contacted If Detox Notified | Assisted By |
|---|---|---|---|---|---|---|
| Released | | | | | | TPR SKELLY |
| Held for Court | X | | | N/A | N/A | |
| Hospitalized | | | | | | |
| Taken to Detox | | | | | | |

| | | | Name | Address | Telephone Number |
|---|---|---|---|---|---|
| Complainant | Victim | | N/A | | |
| Accomplice | Witness | | N/A | | |
| Complainant | Victim | | N/A | | |
| Accomplice | Witness | | N/A | | |
| | Only | | | | |

1.          ON ABOVE DATE AND TIME, WHILE ON PATROL IN MARKED STATE POLICE CRUISER #2665 ON ROUTE 2 WESTBOUND IN LEOMINSTER, I OBSERVED ABOVE VEHICLE TRAVELING BEHIND MY CRUISER WITH NO FRONT PLATE ON IT'S FRONT BUMPER. THE PLATE WAS INSTEAD PLACED ON THE DASHBOARD OF THE VEHICLE FACING UPWARD. THE VEHICLE WAS STOPPED AND THE OPERATOR WAS APPROACHED AND ASKED TO PRODUCE A LICENSE AND REGISTRATION.

2.          THE OPERATOR PRODUCED A REGISTRATION FOR THE VEHICLE AND A MA DRIVER'S LICENSE WITH A "S" NUMBER , A DOB: OF 06-15-60, AND A HEIGHT OF 6 FEET TALL. THE OPERATOR'S APPEARANCE DID NOT MATCH THE LICENSE DESCRIPTION. THE OPERATOR APPEARED APPROX. TEN YEARS YOUNGER AND ABOUT 6 INCHES SHORTER THAN THE 6 FEET TALL DESCRIPTION ON THE LICENSE.

3.          I ASKED THE OPERATOR, "WHERE ARE YOU COMING FROM?", HE STATED, "LOWELL". I THEN ASKED HIM, "WHERE ARE YOU GOING?", HE REPLIED, "FITCHBURG". I ASKED, "HOW OLD ARE YOU?". HE STATED "I WAS BORN IN 1960". I SAID "YES, HOW OLD ARE YOU?". HE BEGAN TO LOOK UPWARD AND STARTED MOVING HIS LIPS AS IF COUNTING. I ASKED

| Investigating Officer's Signature | | Duty Station Mailing Address | Reviewed By |
|---|---|---|---|
| Tpr Angel Cordero | | Mass State Police | |
| Investigating Officer (Print/Type) | ID # | Leominster, Ma. 01453 | |
| Tpr. ANGEL L. CORDERO | 2147 | | |

R39

COUNTING AGAIN. HE FINALLY ANSWERED "35".

4.          DUE TO THE EVASIVE ANSWERS TO MY QUESTIONS. THE FACT THAT HE DID NOT KNOW HIS OWN AGE, COUPLED WITH THE CONFLICTING DESCRIPTION ON HIS LICENSE (HE APPEARED APPROX. 10 YEARS YOUNGER AND ABOUT 6 INCHES SHORTER IN HEIGHT), I ASKED THE OPERATOR TO STEP OUT OF THE VEHICLE AND I CONDUCTED A PACT FRISK. OUTSIDE OF THE VEHICLE THE OPERATOR'S HEIGHT WAS CONFIRMED TO BE ABOUT 5'6".

5.          I ASKED THE OPERATOR, "DO YOU HAVE ANY WEAPONS OR DRUGS IN THE VEHICLE?". HE STATED, "NO", I SAID "ARE YOU SURE?". HE REPLIED, "YES, I'M SURE". I SAID, "THEN IS IT OKAY IF I SEARCH THE CAR?". HE SAID "OKAY". UPON LOOKING AT THE FRONT SEAT AREA OF THE VEHICLE I OBSERVED NUMEROUS USED TISSUES AND A SMALL. WHITE COLORED GLOSSY PLASTIC, PACKET WITH TWO CROSSED REVOLVERS PRINTED ON SAME RESTING ON THE DRIVER'S SEAT.. THE PACKET FOUND IS BELIEVED TO BE "HEROIN" , BASED ON TRAINING AND EXPERIENCE.

6.          I BEGAN TO SEARCH THE VEHICLE FOR MORE FRUITS OF THE CRIME. DURING THE SEARCH I MOVED THE DRIVER'S FLOOR MAT. I OBSERVED WHAT APPEARED TO BE A SQUARE HOLE ON THE RUG WITH A GRINDED METAL PLATE OVER IT AND WHAT APPEARED TO BE A CLEAR PLASTIC BAGGIE WITH A WHITE SUBSTANCE EXPOSED FROM IT'S EDGE. FURTHER CHECK OF THAT AREA REVEALED THE FOLLOWING...

    1. TWO BAGGIES WITH APPROX. 2 OZ OF WHITE ROCKY POWDER A PIECE
    2. TEN BAGGIES WITH APPROX. 1 OZ OF WHITE ROCKY POWDER A PIECE
    3. THREE BAGGIES WITH APPROX. 1/2 OZ OF WHITE ROCKY POWDER A PIECE
    4. ONE BAGGIE WITH APPROX. 1/4 OZ OF WHITE ROCKY POWDER
    5. 68 (FIFTY EIGHT) $20.00 BILLS
    6. 27 (TWENTY SEVEN) $10.00 BILLS
    7. 34 (THIRTY FOUR) $5.00 BILLS
    8. 2 (TWO) $2.00 BILLS
    9. 83 (EIGHTY THREE) $1.00 BILLS
    10. 1 (ONE) $50.00 BILL
    11. 4 (FOUR) QUARTERS
    12. 2 (TWO) DIMES
    13. 1 (ONE) NICKEL

2
10
3
1
___
1.6

### TOTAL: $1738.25 IN U.S. CURRENCY (CASH)

7.          ABOVE WHITE ROCKY POWDER IS BELIEVED TO BE COCAINE. BASED ON TRAINING AND EXPERIENCE. THE OPERATOR WAS ARRESTED, ADVISED OF RIGHTS, AND TRANSPORTED TO SP LEOMINSTER FOR BOOKING.

8.          IT IS THIS OFFICER'S OPINION THAT ABOVE DEFENDANT'S IDENTIFICATION HAS NOT BEEN ESTABLISHED. FINGER PRINTS WERE SENT TO THE FBI IN WASHINGTON WITH NO RESULTS. THE DEFENDANT STATED HE IS AN ILLEGAL ALIEN FROM DOMINICAN REPUBLIC. THE INFORMATION ON HIS LICENSE IS OBVIOUSLY NOT HIS. THIS OFFICER REQUEST THAT THE DEFENDANT BE HELD WITH NO BAIL UNTIL HIS TRUE IDENTITY IS ESTABLISHED.

9.          THE OPERATOR WAS CHARGED WITH ABOVE CHARGES. ABOVE DRUGS WERE ENTERED INTO C-4'S DRUG CONTRABAND JOURNAL AND PLACED IN C-4'S DRUG CONTRABAND LOCKER, INCLUDING THE PACKET OF HEROIN, FOR ANALYSIS. THE CURRENCY WAS ALSO ENTERED IN C-4'S JOURNAL AND PLACED IN C-4'S REGULAR CONTRABAND LOCKER. THE VEHICLE WAS ALSO CONFISCATED.

| Investigating Officer's Signature | Duty Station Mailing Address | Reviewed By |
|---|---|---|
| _(signature)_ | **Mass State Police** | |
| Investigating Officer (Print/Type) TPR  ANGEL L. CORDERO   ID# 2147 | Leominster, Ma. 01453 | |

10.        DURING THE BOOKING PROCESS GUERRERO RECEIVED NUMEROUS PAGES ON HIS MOTOROLA PAGENET PAGER
WITH THE PHONE NUMBER 343-4639, A FITCHBURG NUMBER. GUERRERO HAD STATED HE WAS ON HIS WAY TO FITCHBURG
FROM LOWELL. I DIALED THE NUMBER (343-4639) AND A SPANISH SPEAKING MALE PICKED UP THE PHONE,
HE SAID, "HELLO",
AND I ANSWERED "HELLO"
HE THEN SAID "IS THIS NANENO'S BROTHER?"
I SAID "YES"
HE SAID, "I TRIED CALLING BUT THERE WAS NO ANSWER SO I PAGED YOU BECAUSE THE STATE POLICE STOPPED NANENO
        ON ROUTE 2. I WAS ON MY WAY HOME ON ROUTE 2 AND I PASSED BY HIM. THE STATE POLICE HAD HIM STOPPED
        AND HE WAS STANDING OUTSIDE OF THE CAR"
I SAID, "WHAT?, THEY STOPPED HIM?"
HE SAID "YES, BUT THAT THING IS WELL SECURED RIGHT?, THEY'RE NOT GOING TO FIND IT RIGHT?"
I SAID, "OH NO, THAT IS SECURED"
HE SAID, "YES, BECAUSE HE ALWAYS BRINGS ME SOME AND WE CUT IT HERE, BUT I DON'T NEED ANY RIGHT NOW, I'M HIS
        FRIEND, THE ONE THAT LIVES IN THE WHITE HOUSE IN FITCHBURG, I SPOKE WITH YOU ONE DAY, YOU WERE
        JOKING ABOUT THE TIME YOU GOT ARRESTED. I HAVE TO GO NOW, I JUST WANTED TO LET YOU KNOW ABOUT
        NANENO."
I SAID, "OK"
ABOVE CONVERSATION WAS SPOKEN IN SPANISH.

11.        GUERRERO STATES HE DOESN'T USE THE BUICK LE SABRE, MA REG #732WYM, IN WHICH HE WAS STOPPED
AND STATES HE ONLY BORROWED THE CAR THAT DAY, HOWEVER A RECEIPT FOR A FULL SERVICE OIL CHANGE FROM
"GREASED LIGHTNING" OF 1294 GORHAM ST., LOWELL, MA WAS LOCATED IN THE GLOVE COMPARTMENT OF THE CAR WITH
GUERRERO'S NAME ON IT, DATED 08/17/96

| Investigating Officer's Signature | Duty Station Mailing Address | Reviewed By |
|---|---|---|
| *(signature)* Cordero | Mass State Police | |
| Investigating Officer (Printed Name) Trooper H. L. Cordero  2147 | Leominster, Ma. 01453 | |

CITY OF **PATASKALA,** Plaintiff-Appellee -vs- JASON **KLEIN,** Defendant-Appellant

Case No. 99CA00063

COURT OF APPEALS OF OHIO, FIFTH APPELLATE DISTRICT, LICKING

COUNTY

1999 Ohio App. LEXIS 5114

October 27, 1999, Date of Judgment Entry

PRIOR HISTORY:    [*1] CHARACTER OF PROCEEDING: Appeal from the
Municipal Court. Case No. 99TRD00509.

DISPOSITION: JUDGMENT: Affirmed.

COUNSEL: For Plaintiff-Appellee: HARVEY SHAPIRO, Newark, OH.

For Defendant-Appellant: DAVID B. STOKES, Newark, OH.

JUDGES: Hon. W. Scott Gwin, P.J., Hon. William B. Hoffman, J., Hon. Sheila G.
Farmer, J. Farmer, J., Gwin, P.J., and Hoffman, J., concur.

OPINIONBY: FARMER

OPINION: OPINION

Farmer, J.

On January 17, 1999, Patrolman James Campbell of the Pataskala Police Department
observed a vehicle without a front license plate. Driver of the vehicle was appellant,
Jason Klein. Upon stopping the vehicle and conducting an investigation, Patrolman
Campbell cited appellant for driving under suspension in violation of R.C.
4507.02(D)(2). On February 12, 1999, appellant filed a motion to suppress claiming the
stop was unreasonable. A hearing was held on March 10, 1999. By judgment entry filed
April 23, 1999, the trial court denied the motion. On May 27, 1999, appellant pled no
contest to the charge. By judgment entry filed same date, the trial court found appellant
guilty and sentenced him to ninety days in jail, eighty-seven days suspended, and ordered
him to pay a $ 250 [*2] fine plus court costs. Appellant filed an appeal and this matter is
now before this court for consideration. Assignment of error is as follows:

I THE LOWER COURT ERRED AND/OR ABUSED ITS DISCRETION BY
DENYING APPELLANT'S MOTION TO SUPPRESS.

I

Appellant claims the trial court erred in denying his motion to suppress. We disagree.
There are three methods of challenging on appeal a trial court's ruling on a motion to
suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing
a challenge of this nature, an appellate court must determine whether said findings of fact
are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St. 3d
19, 437 N.E.2d 583; State v. Klein (1991), 73 Ohio App. 3d 486, 597 N.E.2d 1141; State
v. Guysinger (1993), 86 Ohio App. 3d 592, 621 N.E.2d 726. Second, an appellant may
argue the trial court failed to apply the appropriate test or correct law to the findings of
fact. In that case, an appellate court can reverse the trial court for committing an error of
law. State v. Williams (1993), 86 Ohio App. 3d 37, 619 N.E.2d 1141. Finally, assuming
the trial court's findings of fact  [*3]  are not against the manifest weight of the evidence
and it has properly identified the law to be applied, an appellant may argue the trial court
has incorrectly decided the ultimate or final issue raised in the motion to suppress. When
reviewing this type of claim, an appellate court must independently determine, without
deference to the trial court's conclusion, whether the facts meet the appropriate legal
standard in any given case. State v. Curry (1994), 95 Ohio App. 3d 93, 641 N.E.2d 1172;
State v. Claytor (1993), 85 Ohio App. 3d 623, 620 N.E.2d 906; Guysinger. As the United
States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690, 116 S. Ct. 1657,
1663, 134 L. Ed. 2d 911, " . . . as general matter determinations of reasonable suspicion
and probable cause should be reviewed de novo on appeal." Appellant's motion does not
state with any particularity the basis upon which he requests a suppression of the
evidence. We note Crim.R. 47 states a motion "shall state with particularity the grounds
upon which it is made and shall set forth the relief or order sought." Motions to suppress
must comply with the requirements of Crim.R. 47. State v. Marion (1992) 73 Ohio App.
3d 752, 598 N.E.2d 188.  [*4]  Patrolman Campbell stopped appellant because his vehicle
did not have a front license plate. At the suppression hearing, appellant argued the stop
was improper because although the license plate was not in the front bracket of the
vehicle, it was on the dashboard in plain view. Appellant argued once Patrolman
Campbell saw the license plate on the dashboard, he should not have proceeded with any
further inquiry. T. at 3. Upon review, we find the transcript of the suppression hearing is
incomplete. The transcript starts with appellant's cross-examination and notes "after a
lapse in the recording, the following proceedings were had." There is no transcript of
Patrolman Campbell's testimony nor is there any evidence that an App.R. 9(C) statement
was attempted. In particular, there is no testimony as to when Patrolman Campbell
noticed the license plate on the dashboard, how he approached the vehicle and what he
knew about appellant's driving status at the time of the stop. In its judgment entry filed
April 23, 1999, the trial court made the following findings of fact: At the hearing officer
Campbell of the Pataskala Police Department testified that he observed the Defendant

R.43

operating a [*5] motor vehicle on East Broad or Route 16 in the Village of Pataskala and watched the vehicle drive by him from left to his right and he noticed that the vehicle did not have a front license plate. The officer pulled up behind the vehicle, turned on his overhead lights, stopped the vehicle which pulled over. The officer approached the car and asked the driver for his operator's license at which time the driver said he did not have one. The officer at that time notices the license plate stuck on the dash in front of the driver. The officer notes this is a steel license plate, not a temporary tag. The officer checks the BMV records and he confirms that the operator does not have a driver's license. The Defendant is then cited for operating a motor vehicle without a valid operator's license under 4507.02.

Absent a complete transcript, we must accept the trial court's findings of fact. Knapp v. Edwards Laboratories (1980), 61 Ohio St. 2d 197, 400 N.E.2d 384. R.C. 4503.21 requires that an operator of a motor vehicle shall "display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark *** ." Accepting the [*6] trial court's findings, Patrolman Campbell did not see the license plate on the dashboard until after the stop and after his initial contact with appellant. We conclude Patrolman Campbell had a specific articulable fact to stop appellant's vehicle under Terry v. Ohio (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Patrolman Campbell was unaware of the front plate on the dashboard until after the stop and the original questioning of appellant had begun. Once appellant failed to produce a valid driver's license, Patrolman Campbell legitimately proceeded to inquire of his driver's license status. Patrolman Campbell observed a violation of R.C. 4503.21 and had the right to stop the vehicle and appellant. There is no evidence to contradict the finding of fact that Patrolman Campbell did not notice the license plate on the dashboard until the initial questioning of appellant. Upon review, we find the trial court did not err in denying the motion to suppress. The sole assignment of error is denied.

The judgment of the Municipal Court of Licking County, Ohio is hereby affirmed.

By Farmer, J. Gwin, P.J. and Hoffman, J. concur.

Privacy   Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS

SUPERIOR COURT
DOCKET NO. WOCR 96-0666

COMMONWEALTH )
)
V. )
)
JULIO GUERRERO )

## MOTION TO FOR NEW TRIAL
## PURSUANT TO MASS.R.CRIM.P.30

NOW comes the defendant, by and through the undersigned counsel, and hereby requests this Honorable Court to grant a new trial of the above-entitled matter. As grounds for this motion the defendant submits that Mass.R.Crim.P. 30(b) allows the trial judge to grant a new trial at **any time** if it appears that justice may not have been done. In the present case the defendant was only operating a motor vehicle, owned by a third party, that contained a quantity of narcotics hidden in it and therefore should be granted a new trial.

WHEREFORE, the defendant respectfully requests this Honorable Court to grant a new trial of the above-entitled matter.

The defendant,
By his Attorney,

Desmond P. FitzGerald
Law Offices of Desmond P. FitzGerald
236 Commercial Street, Suite 100
Boston, MA 02148
(617) 227-1001
BBO No. 634881

I hereby certify that I
served by mail/hand on
the opposing party/atty
a copy of the foregoing
document this ___ day of ___
1999

*Handwritten annotations in left margin and across page, partially legible:*
*"The defendant has presented no information why he is entitled to a new trial with the following a comprehensive collogue."*
*"Reply to Thursday 12/10/99"*

*12/13/99 Copy to DA & Atty FitzGerald*

*11/22/99 Copy to Judge Gants.*

*DENIED. The trial at the hearing held...*

**FILED**

NOV 15 1999

ATTEST: _Loring P. Lamoureux_ CLERK

R 45

001

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT
CRIMINAL DIVISION
DOCKET NO. **WOCR1996-00666**

COMMONWEALTH

v.

JULIO GUERRERO

/3

### MOTION FOR A NEW TRIAL
### (INEFFECTIVE ASSISTANCE OF COUNSEL)

The defendant moves, pursuant to Mass. R. Crim. P. 30 (b).
that he be granted a new trial on the above entitled matter.

As reasons therefore,

1) Attorney Desmond P. Fitzgerald knowingly and delibera-
tely mislead, misinformed, coerced, lied and confused the defen-
dant which resulted in the defendant pleading guilty in the in-
stant case. Also, attorney fitzgerald ignored the defendant's
numerous inquiries about his cases, and request for documents.
Even after the defendant was convicted he refused to provide
the defendant with any kind of information or documents please
see copy of response letter to one of the defendant's numerous
requests, as well as the defendant's request to this honorable
court after being refused by attorney Fitzgerald. Marked Exhi-
bit [A].

*11/0/01 SECOND Copy to JudgE GaNts,*
*Plymouth CouNty, Brockton/PRD*
*8/30/00 Copy to JudgE GaNts,*
*Mon-2021 County Cambridge/*
*/PRD*
*R 46*

# FILED

AUG 30 2000

ATTEST: *Loring P. Lamoureux* CLERK

002

2) The defendant later newly discovered from documents provided by this honorable court that attorney Desmond P. Fitzgerald had filed a motion for a new trial for the defendant without the defendant's consent, approval, or knowledge. This action alone clearly indicates that attorney Fitzgerald is not just incompetent, but he is also very ineffective.

3) The above mentioned motion was filed without any supporting affidavits, or supporting documents of any form.

Quoting from the commonwealth's response in opposition to the above mentioned motion.

"AT MOST DEFENDANT"S MOTION CONTAINS A BOLD STATEMENT AT THE CHANGE OF PLEA HEARING. NOT ONLY IS THE STATEMENT INACCURATE BUT DEFENDANT, WHO HAS BURDEN OF "PROVIDING SUFFICIENT AND CREDIBLE EVIDENCE TO REBUT A PRESUMPTION THAT THE PRIOR CONVICTION WAS VALID," HAS FAILED TO PRODUCE A TRANSCRIPT OF THE PROCEEDING IN SUPPORT OF HIS BALD STATEMENT WHICH IS MERELY CONTAINED WITHIN THE DEFENDANT"S MOTION." Commonwealth v. Lopez, 690 N.E.2d 809, 426 Mass. 657 (1998).

Please see copy of motion for a new trial filed on November 15, 1999 by attorney Fitzgeral without the defendant's knowledge, marked exhibit [B]. Also, Commonwealth's motion in opposition, marked exhibit [C].

4) For the above stated reasons the defendant prays that this honorable court allow his motion to withdraw his guilty plea and allow the defendant to receive a new trial.

-2-

003

R 47

Further support for this motion is stated in defendant's Affidavit in support for a new trial.

Dated:
September 1, 2000

Respectfully submitted,

*Julio Gherrero*

Julio Gherrero/ Pro se
MCI Norfolk
P.O. Box 43
Norfolk, MA 02056

# FILED

AUG 3 0 2000

ATTEST: *Loving P. Lamoureux* CLERK

–3–

004



# COMMONWEALTH OF MASSACHUSETTS

OFFICE OF THE
**DISTRICT ATTORNEY**
MIDDLE DISTRICT

**JOHN J. CONTE**
**DISTRICT ATTORNEY**

**WORCESTER COUNTY COURTHOUSE**
WORCESTER, MASSACHUSETTS 01608

TELEPHONE
755-8601
AREA CODE 508

February 15, 2001

**Clerk of Courts Office**
**Criminal Business**
**Worcester Superior Court**
**Courthouse – Room 21**
**Two Main Street**
**Worcester, MA 01608**

Re: **Commonwealth V. Julio Guerrero; Docket #96-0666**

Dear Sir or Madam:

Enclosed herewith for filing please find the following documents:

- **Commonwealth's Memorandum in Opposition to Defendant's Motion for New Trial**

and

- **Affidavit of Attorney Desmond Fitzgerald**

Please note this matter is under Justice Ralph D. Gants jurisdiction.

I hereby certify that I have this day caused copies of said document to be served upon defendant by placing said copies in an envelope addressed to: Julio Guerrero M.C.I. Norfolk, P.O. Box 43, Norfolk, MA 02056 and depositing said envelope, postage prepaid with the United States Postal Service.

**Donald H. Progen**
**Assistant District Attorney**

DHP/edh

cc: Julio Guerrero
M.C.I. Norfolk
P.O. Box 43
Norfolk, MA 0205

**FILED**

FEB 1 6 2001

ATTEST: *Louing P. Lamoureuf* CLERK

005

R49

# COMMONWEALTH OF MASSACHUSETTS

**WORCESTER, SS.**

**SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CRIMINAL NO. 96-0666(1-3)**

---

**COMMONWEALTH OF MASSACHUSETTS**

**V.**

**JULIO GUERRERO**

---

)  **COMMONWEALTH'S**
)  **MEMORANDUM IN**
)  **OPPOSITION TO**
)  **DEFENDANT'S MOTION**
)  **FOR NEW TRIAL**
)
)

## STATEMENT OF CASE

In December 1996 the Worcester County Grand Jury handed down three indictments against the defendant herein charging him with the following offenses:

1.  Trafficking in Cocaine over 200 grams, which carried, upon conviction, a maximum sentence of twenty years state prison and a minimum mandatory sentence of fifteen years state prison.

2.  Possession of an altered registry document (driver's license), which carried, upon conviction, a maximum sentence of five years state prison.

3.  Possession of Heroin, which carried, upon conviction, a maximum sentence of two years in the House of Correction.

006

R 50

Defendant was arraigned on January 13, 1997 and bail was set at $25,000.00 cash or $250,000.00 surety. A pretrial conference was held on February 3, 1997 when a motion hearing date of March 21, 1997 and a trial date of April 9, 1997 were set. Defendant was, at that time, represented by Attorney Lawrence Perlmutter of Boston who filed a motion to suppress evidence and a motion to dismiss indictments prior to March 7, 1997 setting the stage for an evidentiary hearing on March 21, 1997.

On March 21, 1997 the Commonwealth was prepared to go forward on the motions but the defendant, who had been released on bail, failed to appear. The defendant was defaulted, a warrant was issued and on March 28, 1997 his bail was declared forfeit.

On September 3, 1999 the defendant was again before the Worcester Superior Court. On that date the warrant was recalled and bail was set at $100,000.00, cash or $1,000,000.00 with surety.

A date of September 10, 1999 was selected to determine the status of defendant's legal representation and on that date Attorney Desmond Fitzgerald filed an appearance in defendant's behalf and was provided with all discovery materials by the Commonwealth.

Attorney Fitzgerald represented defendant from that date until the case was disposed of by plea on October 14, 1999. During that period defendant's bail was reviewed and the Commonwealth engaged in continuing plea negotiations with Attorney Fitzgerald.

On October 14, 1999 the defendant entered guilty pleas to the following offenses as part of an agreed sentence recommendation.

R 57

1. Trafficking Cocaine 100 to 200 grams, which carried a maximum penalty of twenty years state prison with a minimum mandatory sentence of fifteen years state prison.

2. Possession of an altered registry document (driver's license) which carried a maximum penalty of five years state prison; and

3. Possession of Heroin, which carried a maximum penalty of two years House of Correction.

The agreed sentence recommendation which was presented to the Court was a sentence of not less than ten years (the mandatory minimum on the reduced charge) nor more than twelve years state prison on the trafficking charge, and concurrent terms of three to five years state prison on the false document charge and one year House of Correction on the heroin charge.

The Commonwealth also agreed, as part of the plea bargain, not to pursue an indictment against the defendant for failure to appear after being released on bail or recognizance, an offense which, upon conviction, called for a maximum sentence of five years state prison with the mandate that any sentence imposed be served from and after all sentences imposed on the underlying convictions. See **M.G.L.A Chapter 276, Section 82A**.

Following a full and complete colloquy with the defendant and the defendant's acceptance of the facts presented by the Commonwealth, the Court accepted defendant's pleas of guilty and imposed the agreed upon sentence.

Some time after defendant's conviction, defense counsel filed a motion to withdraw guilty plea and for a new trial which the Commonwealth opposed. Defendant

R 52

has now filed his own motion for new trial asking to be allowed to withdraw his guilty plea and alleging ineffective assistance of counsel. The Commonwealth opposes this motion as well and maintains that there was no ineffective assistance of counsel which resulted in defendant entering his guilty pleas and accepting the agreed upon sentences.

## ARGUMENT

Defendant attacks his conviction on the grounds of ineffective assistance of counsel and therefore bears the burden of establishing that there was "serious incompetency, inefficiency or inattention of counsel – behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer – and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defense." **Commonwealth v. Saferian**, **366 Mass. 89, 96 (1974)**. The defendant cannot meet this burden.

First, the evidence in the instant case was strong, if not overwhelming. That evidence, as demonstrated in the discovery materials and as described by the Commonwealth at the plea hearing, demonstrated the following:

At approximately 1:30 p.m. on September 8, 1996, Trooper Angel Cordero, a four year veteran of the Massachusetts State Police, was performing routine patrol duties on Route 2 west-bound in the City of Leominster when he came upon and passed a blue 1987 Buick sedan bearing Massachusetts registration 732-WYM. As he came upon the vehicle, Trooper Cordero noted that the rear license plate was white with red lettering, but as he looked in his rear-view mirror after passing the Buick, Trooper Cordero saw that the front license plate required with such plates was not displayed. Because of this,

009

R.53

the trooper positioned his marked cruiser to the rear of the Buick and signaled the operator to pull over. The Buick pulled over and Trooper Cordero, in full uniform, approached the driver's door.

As Trooper Cordero approached the vehicle he noted that there was but a single occupant, the operator. Upon reaching the driver's door, the trooper saw that there was a license plate resting on the dashboard facing upward. Trooper Cordero asked the operator for his license and registration. The operator, later identified as the defendant herein, produced a license bearing his photograph and the name Julio Guerrero and a registration in the name of Tomas G. Torres. While visually inspecting the license, Trooper Cordero noted that the operator stood about 5 foot 6 inches and appeared to be about 25 years of age while the identifying data on the license which he produced listed him as 6 foot tall with a date of birth of 06-15-60. In conversation at the driver's window, the defendant indicated that he was coming from Lowell and was going to Fitchburg. When asked how old he was, the defendant stated that he was born in 1960. When Trooper Cordero repeated the question, "How old are you?" the defendant looked up in the air and started moving his lips, as if counting. After getting no response, Trooper Cordero, who is fluent in Spanish, repeated the inquiry in that language and the defendant once again stated, also in Spanish, that he was born in 1960. When the trooper asked again in Spanish how old he was, the defendant again began to move his lips as if counting before responding "36".

Because he believed that the defendant's license was not valid, the trooper asked the defendant to step from the vehicle. When the defendant complied with that request, Trooper Cordero confirmed the defendant's height to be approximately 5 foot 6 inches, some 6 inches shorter than the license data indicated. After the trooper made this

R 54

observation, he asked the defendant in Spanish if there were any drugs or weapons in the car and the defendant replied, "no". The trooper then asked if the defendant was sure, to which the defendant replied he was. The trooper then asked if it was okay if he looked in the car and the defendant stated that it was okay.

Trooper Cordero then looked in the vehicle and observed, in plain view, on the driver's seat among a number of tissues, a small white glossy plastic packet bearing a crossed pistols stamp. Based on his training and experience, Trooper Cordero immediately recognized this item as a street bag of heroin. After locating the heroin packet the trooper saw, on the floor to the front of the operator's position, a metal plate which appeared to be covering a hole in the carpeting and from which a portion of a clear plastic bag containing a white powder was protruding. After making these observations, Trooper Cordero placed the defendant under arrest, called for a tow, and requested "back-up" to watch the vehicle until it could be towed back to the Leominster state police barracks and searched. When "back-up" arrived in the form of Trooper Skelly, the defendant was transported back to the barracks in Trooper Cordero's cruiser.

Upon his arrival at the barracks the defendant was "booked" and part of this process was advised of his so-called "Miranda Rights" in Spanish by Trooper Cordero. Upon its arrival at the barracks the Buick was searched and 16 clear plastic bags containing a total of 479.51 grams of 49% pure cocaine was located under the metal plate covering the driver's area carpeting along with $1,738.25 in U.S. currency. After being told of this discovery, the defendant told Trooper Cordero that he was an illegal alien and asked if there was some way that he could help himself out. In conversation with the trooper, the defendant first offered to give up his partners and then indicated that he

would not do so. Also recovered in the search of the vehicle were maintenance documents relating to the vehicle and bearing defendant's name.

While the booking process was ongoing, a Motorola Pagenet pager found on defendant's person received numerous pages from #343-4639, a Fitchburg telephone number. Trooper Cordero dialed the number and had a conversation in Spanish with an unidentified male. In the conversation the caller, who apparently believed he was speaking to the defendant's brother, told the trooper of the road stop and asked if the "thing was well secured" stating, "He always brings me some and we cut it here. But I don't need any right now." an apparent reference to the cocaine discovered in the automobile driven by the defendant.

While one can never predict with absolute certainty the outcome of any trial, it is clear that the Commonwealth had a strong case and conviction was likely. Had the defendant been convicted on the original charges a minimum sentence of not less than fifteen years was mandated. Moreover, without the plea bargain, the Commonwealth was free to, and fully intended to, seek an indictment against the defendant for his failure to appear on March 21, 1997. As was indicated earlier any sentence following conviction on this charge was required by statute to be served on and after the sentences on the underlying charges, thus, exposing the defendant to probable total sentence in excess of fifteen years.

Defense counsel in this case cannot be said to have been ineffective by advising the defendant to plead to a lesser included charge which resulted in a sentence of ten to twelve years state prison and an agreement not to pursue the failure to appear charge which would have resulted in additional incarceration.

012

R 56

Nor was defendant likely to prevail on any motion to suppress or motion to dismiss in the instant case. The road stop was based upon an observed motor vehicle infraction, **Commonwealth v. Garcia**, 34 Mass. App. Ct. 645, 649 (1993) and the exit order followed defendant's production of a patently false driver's license. See **Commonwealth v. Lantiqua**, 38 Mass. App. Ct. 526, 528 (1995). The discovery of the street bag of heroin secured during a proper and, in this case consented to sweep of the vehicle for weapons and contraband. See **Commonwealth v. Torres**, 424 Mass. 153 (1997); **Commonwealth v. Walker**, 370 Mass. 548 (1976). Upon its discovery the trooper had probable cause to search the entire vehicle for controlled substances. **Commonwealth v. Motta**, 424 Mass. 117, 124 (1997). This led to the discovery and seizure of the cocaine which weighed over 479 grams.

Defendant's statement, while not necessary to a successful prosecution of this matter, were nonetheless admissible having been obtained following a knowing and intelligent waiver of his so-called "Miranda Rights". The telephone conversation engaged in by the trooper when he answered defendant's paging device was likewise admissible as an exception to the hearsay rule. See **Commonwealth v. Washington**, 39 Mass. App. Ct. 195, 200 – 201 (1995).

The testimony before the Grand Jury, which reflected the above-recited facts, clearly supported the indictments returned by that body. See **Commonwealth v. McCarthy**, 385 Mass. 160 (1982); **Commonwealth v. O'Dell**, 392 Mass. 445, 451 (1984); **Commonwealth v. Catalina**, 407 Mass. 779, 790 (1990).

Thus defendant was faced with the unpleasant choice of deciding to go to trial with a substantial risk of incarceration well in excess of fifteen years or acception the

257

plea bargain negotiated by his attorney which had a certain result, upon its acceptance by the court, of ten to twelve years incarceration. The defendant quite reasonably accepted the latter.

That the defendant's acceptance of the plea bargain was voluntary, knowing and intelligent was evident in his responses during the colloquy engaged in by the Court. That colloquy insured that there was a factual basis for the plea and that the defendant completely understood the constitutional rights which he waived by pleading guilty, the nature of the crimes charged, the maximum sentence that could be imposed and the fact that the Court was not required to impose the recommended sentence. See **Commonwealth v. Clerico, 35 Mass. App. Ct. 407, 409 (1993).** The defendant was also advised of the immigration ramifications by the Court as was required by **M.G.L.A. Chapter 278, Section 29D**.

Thus, there was no ineffective assistance of counsel here. Defense counsel negotiated a favorable plea bargain for his client and the defendant made a knowing, intelligent, and voluntary decision to accept the bargain for terms. Too allow him to withdraw his plea of guilty now, some 4 ½ years after the commission of the offense when witnesses memories are likely to be somewhat clouded and the evidence is likely to be destroyed or discarded would not serve the interests of justice.

## CONCLUSION

Based upon the forgoing arguments, defendant's motion for new trial should be denied.

A 58

Respectfully submitted,

Donald H. Progen
Assistant District Attorney
Middle District
for the Commonwealth

R 59

COMMONWEALH OF MASSACHUSETTS

WORCESTER, SS

SUPERIOR COURT
DOCKET NO.  WOCR 1996- 00666

COMMONWEALTH          )
                      )
V.                    )
                      )
JULIO GUERRERO        )

## AFFIDAVIT

I hereby state and swear as follows:

1.     I was counsel for Julio Guerrero in reference to the above-captioned matter.

2.     I reviewed a grand jury transcript and a police report that stated the defendant was operating a vehicle without a license plate attached to the front as required by M.G.L. chp. 90 § 6.

3.     I further reviewed the aforementioned documents that reported the defendant produced a license for an individual who was 6'0", 6" taller than the defendant.

4.     The documents also contained a copy of a oil change receipt with the defendant's name on it demonstrating that he had previously been in possession and control of the vehicle in which the trooper allegedly found the narcotics.

5.     I had several discussions with the District Attorney's Office concerning the potential testimony and evidence that would be introduced at trial.

6.     I reviewed the case law concerning some of the issues raised in this case and determined the there was an extremely high probability that the narcotics that were allegedly found in the vehicle would be admissible at trial based upon the rulings in the following cases:

In Commonwealth v. Perez, 8 Mass.L.Rptr. 657, 1998 WL 408972, Mass.Super. (1998) the court held that the fact that the detective had the defendant under continuing surveillance for drug activity does not limit the detective's power to make an otherwise authorized stop for a motor vehicle violation, even if the officer suspected that defendant would also be found to be in possession of drugs.

In Commonwealth v. Santana, 420 Mass. 205, 208-209, 649 N.E.2d 717 (1995), it was determined that the officer stopped defendant's car for a motor vehicle

R60

violation, which defendant contended was a mere pretext for a drug search, the Court cited with approval the "authorization" test employed in United States v. Trigg, 878 F.2d 1037, 1041 (7th Cir.1989), cert. den. sub. nom. Cummings v. United States, 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991), where the Court said that "it is irrelevant whether a reasonable police officer would have made the stop but for the unlawful motive; the stop is valid so long as they are doing no more than they are legally permitted and objectively authorized to do."

In Commonwealth v. Martinez, 44 Mass.App.Ct. 513, 692 N.E.2d 92 (1998) the court held that if an officer(s) conducted investigatory stop prior to the search of a vehicle; and reasonable suspicion justified investigatory stop; after stop, if the officer(s) had probable cause to arrest; then the officer(s) had probable cause to conduct warrantless search of defendant's automobile.

In Commonwealth v. Fuller, 30 Mass.App.Ct. 927, 568 N.E.2d 624 (1991) the court held that the arrest and seizure of car which defendant was driving was justified, thus leading to inventory of car contents which resulted in seizure of drugs, where registry of motor vehicles reported to trooper that defendant's driver's license was suspended, although ultimately it turned out that license had not been suspended.

7. The negotiations between my office and the District Attorney's Office resulted in a reduction in the charges that had been filed against the defendant and a reduction in mandatory time from 15 years to 10 years.

8. I discussed all the possibilities with my client in Spanish and because I am not completely fluent I employed the use of an interpreter to insure that he understood the situation.

9. I plea was presented to the defendant in writing in the Spanish language.

10. The defendant during his plea colloquy stated that he was satisfied with my advice and representation.

11. I am also an immigration law practitioner and I discussed the potential immigration ramifications with the defendant and what could be done to prevent deportation or removal by the INS.

12. As a result of those discussions I filed the following pleadings in a timely manner on the defendant's behalf: a notice of appeal, a Rule 30 motion and a Rule 29 motion.

13. I mailed copies of all the pleadings and motion to the defendant's at MCI Concord with the name that our office believed to be true and correct based upon previous case, Gerinaldo Arias.

Signed under the pains and penalties of perjury this 5th day of February, 2001

_____
Desmond P. FitzGerald

FILED

FEB 1 5 2001

ATTEST: _Louing P. Lamoureuf_ CLERK

FILED

FEB 1 5 2001

ATTEST: _Louing P. Lamoureuf_ CLERK

FEB 1 2 2001

018

R 62

## COMMONWEALTH OF MASSACHUSETTS

**WORCESTER, ss.**

*Criminal*

**SUPERIOR COURT**
~~**CIVIL**~~ **ACTION**
**NO. 96-0666**

## COMMONWEALTH OF MASSACHUSETTS,

### vs.

### JULIO GUERRERO,
**Defendant**

*21*

## ORDER ON DEFENDANT'S MOTION FOR A NEW TRIAL

The defendant, Julio Guerrero, has moved for a new trial under Mass. R. Crim. P. 30,

seeking essentially to withdraw his plea because of the alleged ineffective assistance of counsel.

For the reasons stated below, no substantial issue is raised by the motion and, therefore, under

Mass. R. Crim. P. 30(c)(3), it is denied without a hearing.

On September 8, 1996, Guerrero was driving alone in his car down Route 2 in Leominster

when a state trooper observed that he had no front license plate, as was required for that vehicle,

and stopped the vehicle. Guerrero produced a fraudulent driver's license which described him as

six feet tall and declared that he was born in 1960; Guerrero was roughly 5 feet, 6 inches tall and

looked substantially younger. Guerrero consented to a search of his car, and the trooper quickly

spotted what he recognized to be pre-bagged heroin in the front seat. The state trooper then saw

a metal plate covering a hole in the carpet, and protruding from the hole was a clear plastic bag

containing what turned out to be nearly 480 grams of 49% pure cocaine. As a result of this

discovery, Guerrero was placed under arrest. At booking, a pager was found on his person,

which indicated that he had just been paged numerous times from a Fitchburg telephone number.

1

4/30/01 Copy to DA & Defendant/ssp
R 63

019

The trooper, who spoke fluent Spanish, telephoned the number that had been calling, and the person on the other line said that the State Police had stopped "Nanneno" on Route 2. The person asked if the "thing" was well secured, and received assurances that "they" would not find it. The person on the other line was relieved because, as he explained, "he" always brings me something and we cut it here.

As a result of these events, Guerrero was indicted by the grand jury in December 1996 and charged with trafficking in more than 200 grams of cocaine, possession of an altered driver's license, and possession of heroin. The defendant made bail, but failed to appear at a hearing on the motion to suppress on March 21, 1997, and a default warrant issued. Guerrero remained on the lam until September 3, 1999, when he was brought before the Court and a substantially higher bail was set. On September 10, 1999, a new attorney, Desmond Fitzgerald, filed his appearance on Guerrero's behalf.

On October 14, 1999, after negotiations with the District Attorney, the defendant entered into an agreed-upon plea agreement in which, in return for his plea of guilty to all indictments, the Commonwealth agreed:

- to amend the trafficking indictment to allege an amount of only 100-200 grams, which reduced the mandatory minimum sentence from 15 years in prison to 10 years;

- to recommend a sentence of 10-12 years in state prison on the amended trafficking indictment, 3-5 years in state prison on the altered driver's license indictment, and one year in the House of Correction on the possession of heroin indictment, all to be served concurrently with each other; and

- to recommend that this sentence be served forthwith. This latter recommendation was

2

significant because the defendant at the time of his plea was serving sentences in the

House of Correction for indecent assault and battery and a narcotics offense which had a

projected parole eligibility date of January 7, 2001 and a wrap-up date of January 3, 2003.

The forthwith recommendation, if imposed by the Court, meant that the balance of his

House of Correction time would be deemed concurrent with his state prison sentence, and

this time would be spent in state prison.[1]

A complete plea colloquy was given to the defendant, at which he told the Court that he

understood the plea agreement, knew his rights, and still wished to plead guilty in accordance

with the agreement.   He also was specifically asked if he was aware that, by pleading guilty, he

was giving up his right to file or have heard any motions to suppress or dismiss, and he answered

that he understood this and still wished to plead guilty. He also was specifically asked if he was

satisfied with the advice and representation he had been provided by his attorney, and he said he

was. After the plea colloquy, the Court accepted the defendant's guilty plea and imposed the

sentence that all parties had agreed upon.

The defendant now moves for a new trial, claiming that he should be allowed to withdraw

his guilty plea because of the ineffective assistance of counsel. He contends that his attorney

pressured him to plead guilty and that he "felt that the judge and the DA were going to be mad at

me and that I would probably be left with no attorney to represent me at trial."

In evaluating a claim of ineffective assistance of counsel, this Court must make "a

---

[1]     Although not mentioned at the change of plea hearing, the Commonwealth now says that it also promised not to charge the defendant with bail jumping. If such an indictment had been brought, as it surely could have in view of the evidence, the defendant would have faced a maximum of five additional years in prison, and any time to be served, as a matter of law, must be served on and after the completion of his trafficking sentence.

3

discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel--behavior of counsel falling measurably below they which might be expected from an ordinary fallible lawyer--and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

In this case, there is no evidence presented to indicate that counsel was incompetent in his representation of Guerrero. The Commonwealth had a strong case of trafficking in more than 200 grams of cocaine and was likely to prevail at trial on this indictment, which would have resulted in a sentence of at least 15 years. Moreover, this sentence easily could have been imposed to commence on and after the completion of his unrelated House of Correction sentence, which likely would have meant that the 15 years would not commence until January 3, 2003, since the defendant was a poor candidate for parole from his House of Correction sentence. In short, if he had gone to trial and received only the mandatory minimum sentence, he likely would be in prison until 2018. By pleading guilty , he could be released, if paroled, by 2009, and will surely be released no later than 2011. Encouraging the defendant to accept this plea offer hardly constitutes incompetence under the circumstances of this case.

Nor is this Court persuaded by the defendant's contention that he was coerced into accepting this plea offer. It is true that the alternative of a trial under these circumstances was far less attractive, given the strength of the Commonwealth's case and the mandatory minimum sentence that would have awaited him, but that is precisely why it was wise to accept the plea agreement. The mere fact that a higher mandatory minimum sentence would be imposed after

4

022

R. 66

trial is not reason to invalidate a guilty plea designed to permit the imposition of a lesser mandatory sentence.

Moreover, this Court fully and fairly advised him of the rights he was waiving by pleading guilty at the time of his plea, and there was no reasonable basis for his alleged belief that the Court would be angry at him if he failed to plead guilty. Indeed, the plea was taken in the First Session, and any trial would have been conducted in the Second Session before a different judge.

For the reasons stated above, this Court finds that no substantial issue is raised by the motion for new trial and, therefore, under Mass. R. Crim. P. 30(c)(3), it is **DENIED** without a hearing.

Ralph D. Gants
Justice of the Superior Court

Dated: April 23, 2001

5

023

R.67

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

02-P-1254

COMMONWEALTH

vs.

JULIO GUERRERO.

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

This appeal by the defendant is from the denial of his third motion to withdraw his guilty pleas on indictments charging him with various drug offenses as well as his motion for reconsideration of the denial. For the reasons set out in the Commonwealth's brief (at 9-17) and the judge's memorandum of decision (S.A. 25-30), we see no error in the denials of the defendant's motions.

The orders denying the defendant's third motion to withdraw his guilty pleas and denying his motion for reconsideration of that order are affirmed.

By the Court (Perretta, Brown & Laurence, JJ.),

Ashley Ahern

Clerk

Entered: September 24, 2003.

R.68

COMMONWEALTH OF MASSACHUSETTS

WORCESTER ss.                    SUPREME JUDICIAL COURT

                                 APPEALS COURT
                                 NO. 02-P-1254


                          COMMONWEALTH

                               v.

                          JULIO GUERRERO

APPLICATION FOR FURTHER APPELLATE REVIEW

   Now comes the Defendant in the above-entitled

matter and applies, pursuant to G.L. c.211A.

Sec.11, and Mass. R. App. P. 27.1 for leave to

obtain further appellate review of his conviction

of Worcester County Superior Court indictment

number WOCR1996-00666.



                    Julio Guerrero,

                    By his attorney,


                    DAVID J. BAREND
                    2 Stonewood Circle
                    North Attleboro, MA 02760
                    (508) 316-1171
                    BBO #564032


October, 2003


R 69

COMMONWEALTH OF MASSACHUSETTS

WORCESTER ss.                    SUPREME JUDICIAL COURT

                                 APPEALS COURT
                                 NO. 02-P-1254


                    COMMONWEALTH

                         v.

                    JULIO GUERRERO

          MEMORANUM IN SUPPORT OF
  APPLICATION FOR FURTHER APPELLATE REVIEW

            STATEMENT OF THE CASE

     On December 11, 1996, the Worcester County

Grand Jury returned indictment number WOCR1996-

00666 against Julio Guerrero on the charges of:

falsifying a diver's license, trafficking in over

200 grams of cocaine, and possession of heroin.

(R.13).[1] On March 19, 1997, Mr. Guerrero's counsel

filed a motion to suppress.  On March 21, 1997, Mr.

Guerrero defaulted.  Mr. Guerrero next appeared in

court on September 3, 1999.  (R.13).  Six days

later he received a new court appointed attorney.

     On October 14, 1999, Judge Ralph Gants

accepted Mr. Guerrero's guilty pleas to all three

charges.  The judge sentenced Mr. Guerrero to serve

10 to 12 years at MCI Cedar Junction for the

                         2

                       R.70

trafficking of cocaine violation.  (Tr.25).  He
also imposed a 3 to 5 year sentence for falsifying
a license and a 1 year sentence for the possession
of heroin.  (Tr.25).  Both of these sentences were
ordered to be served concurrent with the 10 to 12
year sentence.  (Tr.25).

On November 15, 1999, Mr. Guerrero's counsel
filed a motion for new trial.  Judge Gants denied
this motion on December 10, 1999.  On August 30,
2000, Mr. Guerrero filed a pro se Motion for New
Trial.  He also filed a motion for appointment of
counsel on that same date.  On or about January 17,
2001 Judge Gants ordered that the Committee for
Public Counsel Services' screening panel to review
Mr. Guerrero's motion for new trial.  Mr.
Guerrero's current counsel was appointed on or
about March 30, 2001.  Less than three and a half
weeks later and prior to any filing by current
counsel, Judge Gants denied Mr. Guerrero's pro se
motion for new trial.

On or about June 18, 2002, Judge Gants denied
a motion for new trial filed by Mr. Guerrero's
current counsel without an evidentiary hearing.  A
Notice of Appeal was filed on or about June 27,

---

[1] The plea hearing transcript will be cited by
volume as (Tr.   ), and the record appendix will be
cited as (R.   ).

R.71

2002. The case was entered in the Appeals Court on September 16, 2002 and docketed as 02-P-1254.

Judge Gants also denied a motion for reconsideration on September 10, 2002. Counsel timely filed a Notice of Appeal on or about September 19, 2002. This case was entered in the Appeals Court on October 10, 2002 and docketed as 02-P-1338. On October 28, 2002, the Appeals Court allowed a motion to consolidate case 02-P-1338 with case 02-P-1254 for the purpose of briefing and oral argument, if any. The Appeals Court affirmed the denials of the motion for new trial and the motion for reconsideration on September 24. (R.1).

R 72

<u>STATEMENT OF FACTS</u>[2]

While performing a routine patrol at 1:30 a.m.
on September 8, 1996, Trooper Cordero approached a
blue 1987 Buick Sedan on Route 2 in Leominster.
(Tr.11).  The trooper observed Massachusetts
registration number 732WYN in white and red
lettering on the rear license plate of this
vehicle.  (Tr.11).  As he passed the car, Trooper
Cordero noticed that it had no front license plate
displayed.  (Tr.11).  The trooper then positioned
his marked cruiser behind the vehicle and signaled
for it to pull over.  (Tr.11).[3]

Once the driver complied, Trooper Cordero
approached the vehicle.  (Tr.11).  While doing so,
he noticed only one person was in the vehicle.
(Tr.11).  "When the trooper reached the door of the
vehicle he observed a license plate resting on the
dashboard facing upward."  (Tr.11).  Trooper

---

[2] The "facts" are based on the information
presented to the Court by the assistant district
attorney during Mr. Guerrero's October 14, 1999
plea hearing.

[3] Trooper Cordero's police report states. "On above
date and time while on patrol in marked state
police cruiser #2665 on route 2 Westbound in
Leominster, I observed above vehicle travelling
behind my cruiser with no front plate on its front
bumper.  The plate was instead placed on the
dashboard of the vehicle facing upward.  The
vehicle was stopped and the operator was approached
and asked to produce a license and registration."
(R.18).

5

<u>R 73</u>

Cordero then asked the driver for his license and registration. (Tr.11).

The driver produced a license bearing his photograph in the name of Julio Guerrero. (Tr.12). The license also indicated that Mr. Guerrero had been born in 1960 and stood six feet tall. (Tr.12). Trooper Cordero believed Mr. Guerrero to be substantially younger and shorter than the description on his license. (Tr.12). The trooper asked Mr. Guerrero to state his age. (Tr.12). Mr. Guerrero replied that he was born in 1960. (Tr.12). Trooper Cordero repeated his inquiry in Spanish. (Tr.12). After a prolonged delay, Mr. Guerrero repeated that he was thirty-six years old. (Tr.12). He then agreed to step from his vehicle and Trooper Cordero estimated the man's actual height at five feet, six inches. (Tr.12).

Mr. Guerrero subsequently provided Trooper Cordero with consent to look inside the car. (Tr.13). The trooper saw a plastic package that appeared to be "pre-bagged" heroin on the front seat. (Tr.13). Trooper Cordero also noticed a plastic bag containing a white substance protruding from a hole in front of the driver's seat. (Tr.13). At that point he placed Mr. Guerrero under arrest. (Tr.13). A thorough search of the hole in the vehicle revealed sixteen plastic bags

R 74

containing over 100 grams of cocaine as well as $1738.25 in U.S. currency.  (Tr.13).  The plastic package found on the front seat proved to contain 0.1 grams of heroin.  (Tr.14).

On or about June 12, 2002, Mr. Guerrero filed a motion for a new trial.  In his supporting affidavit Mr. Guerrero asserted that the prosecutor's statement at the plea hearing concerning the license plate was accurate, but it contained insufficient detail.  Mr. Guerrero swore under the pains and penalties of perjury that the plate not only rested on the dashboard, but it had been wedged between the dashboard and the windshield.  He also averred that the license plate was pressed flush against the windshield and faced forward.

R75

## <u>QUESTIONS PRESENTED</u>

I.   Whether this Court must treat Mr. Guerrero's
     claim that his attorney provided ineffective
     assistance by failing to file a motion to
     suppress as properly preserved.

II.  Whether a license plate resting on a dashboard
     is in compliance with G.L. c. 90, § 6 which
     would allow for the conclusion that Mr.
     Guerrero's counsel provided ineffective
     assistance by failing to move to suppress the
     evidence before the plea hearing.

8

R.76

ARGUMENTS

I.    THIS COURT MUST TREAT MR. GUERRERO'S CLAIM
      THAT HIS ATTORNEY PROVIDED INEFFECTIVE
      ASSISTANCE BY FAILING TO FILE A MOTION TO
      SUPPRESS AS PROPERLY PRESERVED.

The Appeals Court found no error in the denial
of Mr. Guerrero's "third" motion to withdraw his
guilty plea based on the reasons set out in the
Commonwealth's brief and the judge's memorandum of
decision. (R.2). Citing to Commonwealth v.
Randolph, 438 Mass. 290, 294 (2002), the
Commonwealth claims that Judge Gants "properly
rejected the defendant's third motion for a new
trial because he failed to raise the claim about
the constitutionality of the stop 'at the first
available opportunity.'" (R.4). Judge Gants did
not, however, base his decisions denying Mr.
Guerrero's June 12, 2002 motion for new trial and
his motion for reconsideration on a failure to
raise the claims earlier. The judge instead
addressed the merits of Mr. Guerrero's motions.
(R.12-17).

According to Commonwealth v. Randolph, 438
Mass. at 296, when a judge has decided a motion for
new trial on the merits of an issue that a
defendant failed to raise at the appropriate time,
the Appeals Court must treat it as if it had been
properly preserved. Thus, any contention that Mr.

9

R. 77

Guerrero failed to raise his claim earlier is irrelevant.

II. **A LICENSE PLATE RESTING ON A DASHBORAD IS IN COMPLIANCE WITH M.G.L. c. 90, § 6 AND MR. GUERRERO'S COUNSEL, THEREFORE, PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO MOVE TO SUPPRESS THE EVIDENCE BEFORE THE PLEA HEARING.**

If, after pleading guilty, a defendant can demonstrate that he would have prevailed on a motion to suppress, he has then established ineffective assistance for failing to file that motion and his plea must be withdrawn. Commonwealth v. DiPietro, 35 Mass. App. Ct. 638 (1993) FAR denied (1994). A determination that Trooper Cordero stopped Mr. Guerrero's vehicle without reasonable suspicion would indicate that a motion to suppress would have been successful. Commonwealth v. Willis, 415 Mass. 814, 817 (1993). Mr. Guerrero's prior counsel never moved to suppress the evidence discovered by Trooper Cordero. Thus, if this Court finds that the trooper conducted an illegal stop, Mr. Guerrero received ineffective assistance and a new trial must be granted.

Trooper Cordero stopped Mr. Guerrero's vehicle for failure to display a front license plate in violation of G.L. c. 90, § 6. (Tr.11). G.L. c. 90, § 6 states that "Every motor vehicle . . .

10

R.78

registered under this chapter when operated in or
on any way in this Commonwealth shall have its
register number displayed conspicuously thereon by
the number plates furnished by the registrar . . .,
one number plate to be attached at the front and
one at the rear of said motor vehicle . . .".  Mr.
Guerrero, therefore, needed a license plate
"attached" and "displayed conspicuously" at the
"front" of his vehicle.  The prosecutor's statement
at the plea hearing that the trooper "observed a
license plate resting on the dashboard facing
upwards", reveals that Mr. Guerrero complied with
all of the mandates of G.L. c. 90, § 6.

The only Massachusetts case with a somewhat
similar factual scenario is Commonwealth v.
Kimball, 37 Mass. App. Ct. 604, 605-606 (1994).  In
that case the Appeals Court held that an officer
did not notice a visible violation of the law
although he witnessed a vehicle operating with its
rear license plate askew and held by only one
screw.  Id.  Obviously a license plate resting on a
dashboard is more securely attached and displayed
more conspicuously than the plate in Commonwealth
v. Kimball, 37 Mass. App. Ct. at 605, and must,
therefore, also be compliant with G.L. c. 90, § 6.

This Court may have additional concerns as to
whether the dashboard satisfied the legislative

11

R.79

intent for where the plate should have been attached. G.L. c.90, § 6, however, provides no further specifics with respect to where the plate should be attached other than "at the front . . . of said vehicle." It would be hard to describe the dashboard as not being at the front of a motor vehicle.

People v. Weekly, 42 Cal. App. 4th 310 (1995) is the only published case that directly addressed whether the placement of a license plate on a dashboard can serve as justifiable grounds for an officer's stop. During a suppression hearing in that case, an officer asserted that he saw no front license plate at the time that he stopped the defendant's vehicle. Id. Evidence was entered that the plate was on the dashboard. Id. The Court found the stop justifiable based on California's Vehicle Code sections 5700 and 5210 which require that a front plate be "clearly visible".

Although G.L. c.90 §6 indicates that a front license plate must be "displayed conspicuously", it is unclear whether that is akin to California's "clearly visible" requirement. A careful reading of G.L. c.90, § 6 actually reveals that the legislature put a greater emphasis on the visibility of the rear license plate than the front

12

R.80

license plate. For example, a vehicle must have the capability of illuminating its rear license plate, but not its front license plate. Id. In addition, there are still automobiles registered in Massachusetts that have been issued a rear plate but no front plate. Id. These motor vehicles do not even need a front license plate to operate legally.

Should this Court decide that a license plate on a dashboard needs to be "clearly visible" in order to comply with G.L. c.90 § 6, Judge Gants still erred by denying the motion without an evidentiary hearing. According to Commonwealth v. Licata, 412 Mass. 654 (1994), once a defendant in a motion for a new trial presents a substantial issue, his motion can not be denied without an evidentiary hearing. In contrast with the facts of People v. Weekly, 42 Cal. App. 4th 310 (1995) and, more importantly, the facts presented by the Commonwealth at the plea hearing, Officer Cordero's police report indicated that he noticed the plate on the dashboard while in his cruiser.

In addition, Mr. Guerrero asserted in his affidavit that the prosecutor's statement at the plea hearing concerning the license plate was accurate, but it contained insufficient detail. Mr. Guerrero swore under the pains and penalties of

13

R 81

perjury that the plate not only rested on the dashboard, but it had been wedged between the dashboard and the windshield.  Further, the license plate was pressed flush against the windshield and faced forward.

The combination of Trooper Cordero's police report and Mr. Guerrero's affidavit provided a substantial issue regarding whether the license plate on the dashboard was "displayed conspicuously".  Therefore, this case must, at a minimum, be remanded for a full evidentiary hearing.


## CONCLUSION

For the reasons set forth above, Further Appellate Review is appropriate.

Respectfully submitted,


DAVID J. BAREND
ATTORNEY FOR DEFENDANT

2 Stonewood Circle
North Attleboro, MA 02760
(508) 316-1171
BBO #564032

October, 2003


14

R.82

# Supreme Judicial Court for the Commonwealth of Massachusetts
### One Beacon Street, Third Floor, Boston, Massachusetts 02108
### (617) 557-1020

David J. Barend, Esquire
2 Stonewood Circle
N. Attleboro, MA 02760

RE:   Docket No. FAR-13707

**COMMONWEALTH**
       **vs.**
**JULIO GUERRERO**

Worcester Superior Court No. WOCR1996-00666
A.C. No. 2002-P-1254

NOTICE OF DENIAL OF F.A.R. APPLICATION

Please take note that on 11/25/03, the above-
captioned Application for Further Appellate Review was denied.

Susan Mellen, Clerk

Dated: November 25, 2003

To:   Christopher P. Hodgens, A.D.A.
       David J. Barend, Esquire

R. P3

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

WORCESTER ss.                          NO. 02-P-1254


COMMONWEALTH

v.

JULIO GUERRERO

---

BRIEF AND RECORD APPENDIX FOR THE DEFENDANT
ON APPEAL FROM WORCESTER COUNTY SUPERIOR COURT

---


DAVID J. BAREND

ATTORNEY FOR DEFENDANT

2 Stonewood Circle
North Attleboro, MA 02760
(508) 316-1171
BBO #564032


January, 2003

## TABLE OF CONTENTS

TABLE OF CASES. . . . . . . . . . . . . . . . . . .ii

ISSUES PRESENTED. . . . . . . . . . . . . . .  . . . .iii

STATEMENT OF THE CASE. . . . . . . . . . . . . . .1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . 3

ARGUMENTS . . . . . . . . . . . . . . . . . . 7


I.   A LICENSE PLATE RESTING ON A DASHBORAD IS IN
COMPLIANCE WITH G.L. c. 90, § 6 AND MR. GUERRERO'S
COUNSEL, THEREFORE, PROVIDED INEFFECTIVE ASSISTANCE
BY FAILING TO MOVE TO SUPPRESS THE EVIDENCE BEFORE
THE PLEA HEARING. . . . . . . . . . . . . . . . .7

II.   THE EX PARTE COMMUNICATION BETWEEN THE
COMMONWEALTH AND JUDGE GANTS REQUIRES THAT THE
DENAIL OF THE MOTION FOR NEW TRIAL BE OVERTURNED
AND THE CASE REMANDED FOR A FULL EVIDENTIARY
HEARING. . . . . . . . . . . . . . . . . . . . 16


CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . .18

RECORD APPENDIX. . . . . . . . . . . . . . . . . . . . . .19

R.85

ARGUMENTS

I.   A LICENSE PLATE RESTING ON A DASHBORAD IS IN
     COMPLIANCE WITH M.G.L. c. 90, § 6 AND MR.
     GUERRERO'S COUNSEL, THEREFORE, PROVIDED
     INEFFECTIVE ASSISTANCE BY FAILING TO MOVE TO
     SUPPRESS THE EVIDENCE BEFORE THE PLEA HEARING.

If, after pleading guilty, a defendant can
demonstrate that he would have prevailed on a
motion to suppress, he has then established
ineffective assistance for failing to file that
motion and his plea must be withdrawn.
Commonwealth v. DiPietro, 35 Mass. App. Ct. 638
(1993) FAR denied (1994). A determination that
Trooper Cordero stopped Mr. Guerrero's vehicle
without reasonable suspicion would indicate that a
motion to suppress would have been successful.
Commonwealth v. Willis, 415 Mass. 814, 817 (1993).
Attorney Fitzgerald never filed a motion to
suppress, nor did he reschedule the motion
previously filed by Attorney Perlmutter. Thus, if
this Court finds that the trooper conducted an
illegal stop, Mr. Guerrero received ineffective
assistance and a new trial must be granted.

Trooper Cordero stopped Mr. Guerrero's vehicle
for failure to display a front license plate.
(Tr.11). G.L. c. 90, § 6 states that "Every motor
vehicle . . . registered under this chapter when
operated in or on any way in this Commonwealth
shall have its register number displayed

7

R.86

conspicuously thereon by the number plates furnished by the registrar . . ., one number plate to be attached at the front and one at the rear of said motor vehicle . . .".  Mr. Guerrero, therefore, needed a license plate "attached" and "displayed conspicuously" at the "front" of his vehicle.  Assistant District Attorney Progen's statement at the plea hearing that the trooper "observed a license plate resting on the dashboard facing upwards", reveals that Mr. Guerrero complied with all of the mandates of G.L. c. 90, § 6.

The only Massachusetts case with a somewhat similar factual scenario is Commonwealth v. Kimball, 37 Mass. App. Ct. 604, 605-606 (1994).  In that case the Appeals Court held that an officer did not notice a visible violation of the law although he witnessed a vehicle operating with its rear license plate askew and held by only one screw.  Id.  Obviously a license plate resting on a dashboard is more securely attached and displayed more conspicuously than the plate in Commonwealth v. Kimball, 37 Mass. App. Ct. at 605, and must, therefore, also be compliant with G.L. c. 90, § 6.

This Court may have additional concerns as to whether the dashboard satisfied the legislative intent for where the plate should have been attached.  G.L. c.90, § 6, however, provides no further specifics with respect to where the plate

8

R.87

should be attached other than "at the front . . . of said vehicle."   It would be hard to describe the dashboard as not being at the front of a motor vehicle.

Given the complete absence of any Massachusetts case that directly addressed whether a license plate on a dashboard constituted a violation of G.L. c. 90, § 6, reliance on precedent from other jurisdictions for additional guidance would seem reasonable.   This Court may not be overly surprised to learn, however, that a similar dearth exists in almost every other state.   Defense counsel did find a case from the Ohio Court of Appeals, City of Pataskala v. Klein, 1999 Ohio App. Lexis 5114 (5th App. Dist.), that may be instructive.   A copy of this case is included in the appendix.   (R.42).

In City of Pataskala v. Klein, 1999 Ohio App. Lexis 5114 (5th App. Dist.), a patrolman saw a vehicle without a front license plate drive by him. The officer turned on his overhead lights and the vehicle pulled over.   Id.   He approached the car and asked the driver for his license.   Id.   The driver informed the officer that he did not have a license.   Id.   The officer then noticed a steel license plate stuck on the dashboard.   Id.   An Ohio statute, quite similar to G.L. c. 90, § 6, required that an operator of a motor vehicle "display in

9

plain view on the front and rear of the motor
vehicle the distinctive number and registration
mark . . . .".  Id.  The Court indicated that the
license plate resting on the dashboard complied
with the statute.  Id.

The Court held, however, that the patrolman
had a specific articulable fact to stop the vehicle
under Terry v. Ohio, 392 U.S. 1 (1968) when he did
not see a front license plate while in his cruiser.
Id.  The officer's subsequent discovery that the
driver had no license was justifiable only because
his inquiry preceded his awareness of the license
plate on the dashboard.  Id.  Had the patrolman
noticed the plate on the dashboard before he asked
the driver for his license, the evidence concerning
the status of the driver's license would have been
suppressed.  Id.

Based on City of Pataskala v. Klein, the
license plate on Mr. Guerrero's dashboard would be
found in compliance with G.L. c.90, § 6.  The
evidence subsequently found would also be
suppressed.  According to the reasoning of that
case this Court could find that Trooper Cordero had
reasonable suspicion to stop Mr. Guerrero's vehicle
if, as the prosecutor stated at the plea hearing,
he did not see the front license plate while
driving in his cruiser.  Id.  As opposed to the
officer in City of Pataskala v. Klein, however,

10

Trooper Cordero noticed the plate on the dashboard before he began questioning Mr. Guerrero. The trooper's awareness of this plate voided any legitimate basis for an inquiry of Mr. Guerrero. Id. The evidence discovered as a result of that inquiry must, therefore, be suppressed.

This reasoning comports with that in <u>Florida v. Royer</u>, 46 U.S. 491, 500 (1983), where the United States Supreme Court stated that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." See also <u>Commonwealth v. Ciaramitaro</u>, 51 Mass. App. Ct. 638, 643 (2001). Thus, when Trooper Cordero noticed the license plate on the dashboard he "effectuated the purpose of the stop" before he obtained Mr. Guerrero's driver's license. The detention lasted longer than necessary, mandating the suppression of all subsequently discovered evidence. Id.

Judge Gants seemingly concluded that whether the license plate on Mr. Guerrero's dashboard complied with G.L. c. 90, § 6 was irrelevant. (R.10). According to the judge's decision, the officer's belief that it might have been a violation constituted sufficient reasonable suspicion to continue to detain Mr. Guerrero. (R.10). This reasoning is inapposite with <u>Florida v. Royer</u>, 46 U.S. 491, 500 (1983) and <u>Commonwealth</u>

11

R.90

OUT, AND HE WOULD BE SERVING HIS SENTENCE IN THE STATE
PRISON RATHER THAN THE HOUSE OF CORRECTION.

THE COURT: OKAY. AND WITH RESPECT TO THE
SECOND?

MR. FITZGERALD: YOUR HONOR, IF I MAY. I
BELIEVE MY CLIENT HAS A QUESTION IN REGARD TO EVERYTHING
THAT WAS JUST SAID TO THE COURT. ONE MOMENT, PLEASE.

THE COURT: OKAY.

(COUNSELLOR FITZGERALD CONFERS WITH DEFENDANT GUERRERO
OFF-THE-RECORD)

MR. FITZGERALD: ALL RIGHT, NEVER MIND, YOUR
HONOR.

THE COURT: NOW, MR. PROGEN, WHEN YOU SAY IT
WOULD WIPE OUT THE OTHER SENTENCE, THAT SENTENCE WOULD
STILL REMAIN, IT WOULD JUST BE SERVED CONCURRENTLY WITH
HIS --

MR. PROGEN: YES, JUDGE. HE WOULD BE SERVING
THAT TIME IN THE STATE PRISON RATHER THAN AT THE HOUSE
OF CORRECTION.

THE COURT: SO WHAT YOU ARE SAYING THEN IS THAT
WITH THE FORTHWITH SENTENCE, THE HOUSE TIME HE IS SERVING
WOULD BE SERVED IN STATE PRISON AND WOULD RUN AT THE SAME
TIME AS HE IS SERVING THE SENTENCE THAT BRINGS HIM HERE
TODAY?

---

MR. PROGEN: YES, YOUR HONOR.

THE COURT: AND WITH RESPECT TO THE INDICTMENT
CONCERNING UNLAWFUL POSSESSION OF ALTERED LICENSE, YOU
ARE SEEKING THREE TO FIVE YEARS TO BE SERVED
CONCURRENTLY?

MR. PROGEN: YES, YOUR HONOR.

THE COURT: AND WITH RESPECT TO THE CHARGE OF
UNLAWFUL POSSESSION OF HEROIN, YOU ARE SEEKING A ONE YEAR
HOUSE OF CORRECTION TO BE SERVED CONCURRENTLY?

MR. PROGEN: THAT'S CORRECT.

THE COURT: OKAY. LET'S BRING MR. GUERRERO UP.
AND I'LL ASK HIM A NUMBER OF QUESTIONS WITH RESPECT TO
THAT UNDERSTANDING AND TO THIS PLEA.

(DEFENDANT GUERRERO TAKES WITNESS STAND)

THE COURT: MY NAME IS RALPH GANTS, AND I AM
A JUDGE OF THE SUPERIOR COURT.

I AM GOING TO ASK YOU A NUMBER OF QUESTIONS IN ORDER TO
MAKE SURE OF THREE THINGS.

FIRST, I WANT TO MAKE SURE THAT YOU UNDERSTAND THE RIGHTS
THAT YOU ARE GIVING UP BY PLEADING GUILTY RATHER THAN
EXERCISING YOUR RIGHT TO GO TO TRIAL.

SECOND, I WANT TO ENSURE THAT YOU ARE PLEADING GUILTY
VOLUNTARILY; THAT IS, OF YOUR OWN FREE WILL AND NOT
BECAUSE SOMEBODY IS FORCING YOU OR PRESSURING YOU TO

---

PLEAD GUILTY.

AND THIRD, I WANT TO MAKE SURE THAT YOU ARE MAKING YOUR
GUILTY PLEA KNOWINGLY; THAT IS, KNOWING THE RIGHTS THAT
YOU ARE GIVING UP BY PLEADING GUILTY, THE CHARGES TO
WHICH YOU ARE PLEADING GUILTY, AND THE CONSEQUENCES OF
YOUR GUILTY PLEA.

IF AT ANY TIME THERE IS ANYTHING THAT I SAY THAT YOU DO
NOT UNDERSTAND, PLEASE STOP ME, AND ASK ME TO CLARIFY IT
OR REPEAT IT.

YOU ALSO MAY SPEAK WITH YOUR ATTORNEY AT ANY TIME, AND
I WILL GIVE YOU THE CHANCE TO SPEAK PRIVATELY WITH HIM;
THAT IS, TO SPEAK WITH HIM WITHOUT ME OR THE PROSECUTOR
BEING ABLE TO HEAR WHAT YOU SAY.

SO FAR DO YOU UNDERSTAND WHAT I HAVE SAID?

THE DEFENDANT: YES.

THE COURT: PLEASE STATE YOUR NAME, SIR.

THE DEFENDANT: JULIO GUERRERO.

THE COURT: AND WHAT DAY WERE YOU BORN?

THE DEFENDANT: MARCH 19TH, '67.

THE COURT: AND HOW FAR HAVE YOU GONE IN
SCHOOL?

THE DEFENDANT: I GRADUATED FROM HIGH SCHOOL.

THE COURT: AND WHERE DID YOU GRADUATE FROM
HIGH SCHOOL?

---

THE DEFENDANT: IN THE DOMINICAN REPUBLIC.

THE COURT: OKAY. HAVE YOU HAD ANY JOBS?

THE DEFENDANT: IN THIS COUNTRY?

THE COURT: YES.

THE DEFENDANT: YES.

THE COURT: AND WHAT JOBS HAVE YOU HELD IN THIS
COUNTRY?

THE DEFENDANT: I WORKED LIKE IN MAINTENANCE.

THE COURT: OKAY. NOW, YOU HAVE A SPANISH
INTERPRETER, ARE YOU ABLE TO UNDERSTAND WHAT IS BEING
SAID TO YOU?

THE DEFENDANT: YES.

THE COURT: HAVE YOU TAKEN ANY MEDICATIONS,
DRUGS, OR ALCOHOL TODAY?

THE DEFENDANT: MEDICATION.

THE COURT: OKAY. WHAT KIND OF MEDICATION HAVE
YOU TAKEN?

THE DEFENDANT: SOMETHING FOR ARTHRITIS.

THE COURT: OKAY. DOES THAT DRUG IN ANY WAY
AFFECT YOUR ABILITY TO THINK CLEARLY?

THE DEFENDANT: NO, IT DOESN'T AFFECT MY
THINKING; IT ONLY CALMS MY PAIN.

THE COURT: HAVE YOU EVER BEEN TREATED FOR ANY
MENTAL, PSYCHOLOGICAL, OR EMOTIONAL ILLNESS OR CONDITION?

1-8

1    THE DEFENDANT:  NO.

2        THE COURT:  NOW, I UNDERSTAND THAT YOU ARE

3    OFFERING TO CHANGE YOUR PLEA FROM NOT GUILTY TO GUILTY

4    AS TO THREE INDICTMENTS.  I AM GOING TO ASK MR. PROGEN,

5    THE PROSECUTOR, TO STATE THE THREE INDICTMENTS TO WHICH

6    YOU HAVE AGREED THROUGH YOUR ATTORNEY TO PLEAD GUILTY.

7    AND I WILL ALSO ASK HIM TO STATE THE MAXIMUM SENTENCE ON

8    THESE CHARGES, AND ALSO TO TELL ME WHETHER THERE IS ANY

9    MANDATORY MINIMUM SENTENCE AS TO THESE CHARGES.

10       MR. PROGEN:  YOUR HONOR, THE DEFENDANT IS

11   OFFERING TO CHANGE HIS PLEA TO SO MUCH OF THE INDICTMENT

12   AS IT NOW ALLEGES TRAFFICKING IN COCAINE IN AN AMOUNT

13   EXCEEDING ONE HUNDRED GRAMS, BUT LESS THAN TWO HUNDRED

14   GRAMS.  THE MAXIMUM SENTENCE ON THAT CHARGE IS TWENTY

15   YEARS; STATE PRISON.  THE MINIMUM MANDATORY IS TEN YEARS;

16   STATE PRISON.

17   THE SECOND CHARGE HE IS OFFERING TO CHANGE HIS PLEA IS

18   WITH RESPECT TO THE CHARGE OF A POSSESSION OF AN ALTERED

19   LICENSE.  THE MAXIMUM SENTENCE ON THAT, JUDGE, IS FIVE

20   YEARS.  THERE IS NO MINIMUM THERE.

21   WITH RESPECT TO THE THIRD CHARGE, HE IS OFFERING A CHANGE

22   OF PLEA TO THAT AS A SIMPLE POSSESSION OF HEROIN.  IT'S

23   ONE YEAR OF HOUSE OF CORRECTION THERE BEING NO PRIOR

24   OFFENSE.

1-9

1        THE COURT:  ARE THOSE THE INDICTMENTS TO WHICH

2    YOU ARE PLEADING GUILTY?

3        THE DEFENDANT:  YES.

4        THE COURT:  YOU UNDERSTAND THAT THOSE ARE THE

5    MAXIMUM SENTENCES THAT MAY BE IMPOSED?

6        THE DEFENDANT:  YES.

7        THE COURT:  NOW, DO YOU ALSO UNDERSTAND THAT

8    WITH RESPECT TO THE INDICTMENT CHARGING YOU WITH

9    TRAFFICKING IN COCAINE IN AN AMOUNT GREATER THAN ONE

10   HUNDRED AND LESS THAN TWO HUNDRED GRAMS, THAT THERE IS

11   A MANDATORY MINIMUM SENTENCE OF TEN YEARS ON THAT CHARGE?

12       THE DEFENDANT:  YES.

13       THE COURT:  AND DO YOU REALIZE THAT THAT MEANS

14   THAT IF YOU PLEAD GUILTY TO THOSE CHARGES -- OR TO THAT

15   CHARGE, THAT I HAVE NO CHOICE BUT TO IMPOSE AT LEAST A

16   TEN YEAR SENTENCE ON YOU ON THAT CHARGE?

17       THE DEFENDANT:  YES.

18       THE COURT:  NOW, YOU HAVE HEARD THE PLEA

19   AGREEMENT THAT MR. PROGEN EARLIER DESCRIBED TO ME?

20       THE DEFENDANT:  YES.

21       THE COURT:  AND IS THAT THE AGREEMENT THAT WAS

22   REACHED BETWEEN YOUR ATTORNEY AND THE D.A.'S OFFICE?

23       THE DEFENDANT:  YES.

24       THE COURT:  AND IS THAT TO YOUR UNDERSTANDING

1-10

1        AN AGREED UPON SENTENCE; THAT IS, IS THAT THE SENTENCE

2    WHICH YOUR ATTORNEY WILL ALSO RECOMMEND TO ME?

3        THE DEFENDANT:  YES.

4        THE COURT:   IS THERE ANYTHING ABOUT THE

5    AGREEMENT THAT WAS DESCRIBED THAT DOES NOT MATCH YOUR

6    UNDERSTANDING AS TO THE AGREEMENT?

7        THE DEFENDANT:  NO.  EVERYTHING IS FINE.

8        THE COURT:  NOW, DO YOU UNDERSTAND THAT IF I

9    ACCEPT YOUR PLEA, I WILL NOT IMPOSE A SENTENCE THAT IS

10   GREATER THAN THAT RECOMMENDED WITHOUT FIRST GIVING YOU

11   THE RIGHT TO WITHDRAW YOUR PLEA?

12       THE DEFENDANT:  YES.

13       THE COURT:  BUT DO YOU ALSO UNDERSTAND THAT IF

14   YOU DO PLEAD GUILTY AND I IMPOSE A SENTENCE THAT IS EQUAL

15   TO OR LESS THAN THAT WHICH IS RECOMMENDED, THAT YOU MAY

16   NOT WITHDRAW YOUR PLEA?

17       THE DEFENDANT:  YES.

18       THE COURT:  OKAY.  I AM GOING TO NOW ASK,

19   MR. PROGEN, THE A.D.A. IN THIS CASE, TO DESCRIBE THE

20   FACTS THAT HE BELIEVES COULD BE PROVEN BEYOND A

21   REASONABLE DOUBT IF THE CASE WERE TO GO TO TRIAL.

22   PLEASE LISTEN TO WHAT HE SAYS, BECAUSE AT THE END I WILL

23   ASK YOU WHETHER HE HAS FAIRLY AND ACCURATELY DESCRIBED

24   WHAT YOU DID IN THIS CASE.

1-11

1        MR. PROGEN:  YOUR HONOR, THE PRINCIPLE WITNESS

2    IN THIS CASE IS MASSACHUSETTS STATE TROOPER ANGEL

3    CORDERO.  THAT IS C O-R-D-E-R-O.

4    AT THE TIME OF THIS INCIDENT WHICH WAS ABOUT 1:30 P.M.

5    ON SEPTEMBER 8TH, 1996, HE WAS A FOUR-YEAR VETERAN OF THE

6    MASSACHUSETTS STATE POLICE ASSIGNED TO THE LEOMINSTER

7    BARRACKS.  AT THAT TIME, HE WAS PERFORMING A ROUTINE

8    PATROL ON ROUTE 2 WESTBOUND IN THE CITY OF LEOMINSTER IN

9    A MARKED CRUISER AND FULL UNIFORM WHEN HE CAME UPON AND

10   PASSED A BLUE 1987 BUICK SEDAN BEARING MASSACHUSETTS

11   REGISTRATION 732WYN.  AS HE CAME UPON THE VEHICLE, HE

12   NOTED THAT THE REAR LICENSE PLATE WAS WHITE WITH RED

13   LETTERING, BUT AS HE LOOKED IN HIS REAR-VIEW MIRROR HE

14   NOTED THAT THERE WAS NO FRONT LICENSE PLATE DISPLAYED

15   WHICH IS REQUIRED FOR THOSE TYPE OF PLATES.

16   BECAUSE OF THIS HE POSITIONED HIS CRUISER TO THE REAR OF

17   THE BUICK AND SIGNALED IT TO PULL OVER.  IT PULLED OVER,

18   AND THE TROOPER APPROACHED THE DOOR.  THERE WAS ONE

19   PERSON IN THE VEHICLE.  IT WAS THE DEFENDANT SEATED HERE

20   BEFORE YOU, THE OPERATOR.

21   WHEN THE TROOPER REACHED THE DOOR OF THE VEHICLE, HE

22   OBSERVED A LICENSE PLATE RESTING ON THE DASHBOARD FACING

23   UPWARD.  HE ASKED THE DEFENDANT FOR A LICENSE AND

24   REGISTRATION.  THE DEFENDANT PRODUCED A LICENSE BEARING

HIS PHOTOGRAPH IN THE NAME JULIO GUERRERO; A REGISTRATION
IN THE NAME OF TOMAS D. TORRES.  TROOPER CORDERO LOOKED
AT THE LICENSE, NOTED THAT THE DESCRIPTION OF THE
LICENSEE WAS A PERSON BORN IN 1960 AND STANDING SIX FEET
TALL.  HE NOTED AT THAT TIME THAT THE DEFENDANT WAS
SUBSTANTIALLY YOUNGER AND APPEARED TO BE ABOUT FIVE FOOT
SIX IN HEIGHT.

HE HAD A CONVERSATION WITH THE DEFENDANT AT THE WINDOW
OF THE CAR.  THE TROOPER ASKED HOW OLD HE WAS; THE
DEFENDANT RESPONDED HE WAS BORN IN 1960.  THE TROOPER
AGAIN ASKED HOW OLD HE WAS.  THE DEFENDANT LOOKED UP IN
THE AIR AND STARTED MOVING HIS LIPS AS IF COUNTING.  THE
TROOPER WAITED AND RECEIVED NO RESPONSE.

TROOPER CORDERO WAS BORN AND RAISED IN A SPANISH
HOUSEHOLD.  HE WAS EDUCATED IN SPANISH.  HE STILL SPEAKS
SPANISH AT THIS HOME.

HE REPEATED THE INQUIRY IN SPANISH.  THE DEFENDANT STATED
IN SPANISH HE WAS BORN IN 1960.  HE AGAIN ASKED HOW OLD
HE WAS.  THE DEFENDANT BEGAN COUNTING AGAIN BEFORE
RESPONDING THIRTY-SIX.

THE DEFENDANT ASKED  - STRIKE THAT.

THE TROOPER ASKED THE DEFENDANT TO STEP FROM THE VEHICLE;
THE DEFENDANT COMPLIED WITH THE REQUEST.  HE CONFIRMED
THE DEFENDANT'S HEIGHT TO BE ABOUT FIVE FOOT SIX.

---

HE THEN ASKED THE DEFENDANT WHETHER OR NOT THERE WERE
DRUGS OR WEAPONS IN THE CAR.  THE DEFENDANT REPLIED NO.
THE TROOPER ASKED IF THE DEFENDANT WAS SURE.  THE
DEFENDANT REPLIED HE WAS.  THE TROOPER THEN ASKED IF IT
WAS OKAY IF HE LOOKED IN THE CAR.  THE DEFENDANT SAID
YES.

WHEN THE TROOPER LOOKED AT THE FRONT SEAT, HE OBSERVED
A NUMBER OF TISSUES IN A SMALL, WHITE, GLOSSY PLASTIC
PACKAGE BEARING CROSS PISTOLS.  BASED ON HIS TRAINING AND
EXPERIENCE, CORDERO RECOGNIZED THE ITEMS AS PRE-BAGGED
HEROIN.

AFTER LOCATING THE PACKET, HE LOOKED IN FRONT OF THE
OPERATOR'S POSITION.  THERE WAS A METAL PLATE WHICH
APPEARED TO BE COVERING A HOLE IN THE CARPET AND
PROTRUDING FROM THE PLATE WAS A CLEAR, PLASTIC BAG WITH
A WHITE SUBSTANCE.  AFTER MAKING THOSE OBSERVATIONS, THE
DEFENDANT WAS FORMERLY PLACED UNDER ARREST.  THE TROOPER
CALLED FOR A TOW AND REQUESTED BACK-UP.

THE VEHICLE WAS THEN SEARCHED.  IN THAT -- BELOW THAT
PLATE WAS FOUND SIXTEEN CLEAR PLASTIC BAGS OF WHAT PROVED
TO BE FORTY-NINE PERCENT PURE COCAINE IN AN AMOUNT WELL
OVER A HUNDRED GRAMS.  THERE WAS ALSO SEVENTEEN HUNDRED
AND THIRTY-EIGHT DOLLARS AND TWENTY FIVE CENTS OF U.S.
CURRENCY.  THE DEFENDANT WAS TOLD OF THIS DISCOVERY.

---

WHILE UNDERGOING THE BOOKING PROCESS, A PAGER, WHICH WAS
ON THE DEFENDANT, BEGAN REPORTING A SERIES OF TELEPHONE
NUMBERS.  TROOPER CORDERO RESPONDED TO ONE OF THE
TELEPHONE NUMBERS.  HE HAD A CONVERSATION WITH A SPANISH
SPEAKING MALE.

THE MALE ASKED THE TROOPER IF HE WAS NANENO -- THAT'S
N-A-N-E-N-O -- HIS BROTHER.

THE TROOPER SAID, YES.

THE MAN SAID, I TRIED CALLING BUT THERE WAS NO ANSWER,
SO I PAGED YOU BECAUSE THE STATE POLICE STOPPED NANENO
ON ROUTE 2.  I WAS ON MY WAY HOME ON ROUTE 2 WHEN I
PASSED THEM.  THE STATE POLICE HAD STOPPED HIM, AND HE
WAS STANDING OUTSIDE THE CAR.

THE TROOPER RESPONDED IN SPANISH, WHY DID THEY STOP HIM?
THE MAN SAID, YES, BUT THAT THING IS WELL SECURED; RIGHT?
THEY'RE NOT GOING TO FIND IT; RIGHT?

THE TROOPER SAID, YEAH, NO, THAT'S SECURED.

THE MAN THEN SAID, YES, BECAUSE HE ALWAYS BRINGS ME
SOMETHING; WE CUT IT HERE.  I DON'T NEED ANY RIGHT NOW
I AM HIS FRIEND.

AND HE GOES ON AND TALKS ABOUT A PREVIOUS CONVERSATION
WITH NANENO'S BROTHER.

THE PLASTIC PACKET THAT WAS FOUND ON THE SEAT WAS ALSO
SUBMITTED TO THE LAB, AND THE CONTENTS WERE ANALYZED AND

---

DETERMINE TO BE POINT ONE GRAMS OF HEROIN.
THAT WOULD BE THE EVIDENCE IN THIS CASE.

THE COURT:  WHAT ABOUT THE COCAINE, WAS THAT
TESTED?

MR. FROGEN:  YES, IT WAS.  FORTY-NINE PERCENT
PURE.  THE AMOUNT FOUND, GIVEN THE STREET VALUE OR
COCAINE AT THAT TIME -- THE STREET PURITY, IT WAS
PROBABLY WORTH AROUND NINETY-FIVE THOUSAND DOLLARS.

THE COURT:  NOW, HAVE YOU HEARD WHAT MR. FROGEN
HAS JUST SAID?

THE DEFENDANT:  YES.

THE COURT:  DO THE FACTS THAT HE STATED FAIRLY
AND ACCURATELY DESCRIBE WHAT YOU DID IN THIS CASE?

THE DEFENDANT:  YES.

THE COURT:  IS THERE ANYTHING THAT HE SAID THAT
YOU DO NOT BELIEVE TO BE FAIR OR ACCURATE?

THE DEFENDANT:  NO, EVERYTHING IS FINE.

THE COURT:  DID YOU INDEED POSSESS THAT BAG OF
HEROIN THAT WAS FOUND IN THE FRONT SEAT OF YOUR CAR?

THE DEFENDANT:  YES.

THE COURT:  AND WERE YOU INDEED CARRYING THE
-- MORE THAN A HUNDRED GRAMS OF COCAINE IN YOUR CAR?

THE DEFENDANT:  YES.

THE COURT:  AND WERE YOU CARRYING THAT COCAINE

1-16

```
 1   WITH THE INTENT OF HAVING OF THAT COCAINE BE SOLD TO
 2   OTHERS?
 3              THE DEFENDANT:  YES.
 4              THE COURT:  AND WERE YOU INDEED IN POSSESSION
 5   OF THE ALTERED DRIVER'S LICENSE?
 6              THE DEFENDANT:  YES.
 7              THE COURT:  DO YOU UNDERSTAND THAT BY PLEADING
 8   GUILTY YOU WILL BE ADMITTING TO THE TRUTH OF THE FACTS
 9   WHICH MR. PROGEN HAS STATED?
10              THE DEFENDANT:  THERE WASN'T A -- IT WASN'T AN
11   ALTERED LICENSE PLATE.  IT WAS JUST THE ALTERED LICENSE.
12              THE COURT:  IT WAS THE DRIVER'S LICENSE NOT THE
13   LICENSE PLATE YOU ARE SAYING.
14              THE DEFENDANT:  OKAY.
15   DO YOU UNDERSTAND THAT BY PLEADING GUILTY YOU WILL BE
16   ADMITTING TO THE TRUTH OF THE FACTS THAT MR. PROGEN HAS
17   JUST STATED?
18              THE DEFENDANT:  YES.
19              THE COURT:  IS THAT WHAT YOU WISH TO DO?
20              THE DEFENDANT:  YES.
21              THE COURT:  ARE YOU PLEADING GUILTY BECAUSE
22   THAT IS INDEED WHAT YOU DID IN THIS MATTER?
23              THE DEFENDANT:  YES.
24              THE COURT:  NOW, DO YOU UNDERSTAND THAT BY
```

1-17

```
 1   PLEADING GUILTY YOU ARE GIVING UP CERTAIN RIGHTS?
 2              THE DEFENDANT:  YES.
 3              THE COURT:  I AM GOING TO GO OVER THOSE RIGHTS
 4   WITH YOU, AND THEY ARE IN FOUR PARTS.
 5   FIRST, YOU HAVE THE RIGHT TO A FAIR AND IMPARTIAL TRIAL
 6   TO DETERMINE YOUR GUILT OR YOUR INNOCENCE.  YOU ALSO HAVE
 7   THE RIGHT TO DECIDE WHETHER YOUR GUILT OR INNOCENCE WILL
 8   BE DETERMINED BY A JURY OF TWELVE PERSONS FROM THIS
 9   COUNTY OR BY A JUDGE.
10   AT SUCH A TRIAL, WHETHER IT BE A JURY TRIAL OR A JUDGE
11   TRIAL, YOU SHALL BE PRESUMED INNOCENT UNTIL OR UNLESS THE
12   GOVERNMENT PROVES THAT YOU ARE GUILTY BEYOND A REASONABLE
13   DOUBT.  YOU WOULD NOT BE REQUIRED TO TESTIFY OR TO CALL
14   ANY WITNESSES OR TO PRODUCE ANY EVIDENCE SINCE YOU WOULD
15   BE PRESUMED INNOCENT UNDER THE LAW.  THE BURDEN WOULD
16   REST WITH THE COMMONWEALTH, THE GOVERNMENT, TO PROVE YOUR
17   GUILT BEYOND A REASONABLE DOUBT.  YOU WOULD NOT NEED TO
18   PROVE YOUR INNOCENCE.
19   IF YOU WERE TO ASK FOR A JURY TRIAL, YOU MAY PARTICIPATE
20   IN THE SELECTION OF THAT JURY, AND YOU MAY REMOVE ANY
21   JUROR WHO YOU CAN SHOW WOULD NOT BE FAIR OR IMPARTIAL.
22   YOU ALSO MAY REMOVE ANY NUMBER OF JURORS, ANY FOUR OR
23   FIVE JURORS, FOR ANY REASON AT ALL, AS LONG AS THE REASON
24   IS NOT THE JURORS RACE, OR GENDER, OR RELIGION, OR NATION
```

1-18

```
 1   OF ORIGIN.
 2   NOW, AT A JURY TRIAL, THE JUDGE WOULD INSTRUCT THE JURY
 3   AS TO WHAT THE LAW IS.  HE WOULD TELL THE JURY THAT THEY
 4   MUST COMPLY WITH THE LAW AS GIVEN TO THEM BY THE JUDGE.
 5   AT ANY JURY TRIAL YOU COULD NOT BE FOUND GUILTY UNTIL ALL
 6   TWELVE OF THE JURORS UNANIMOUSLY FOUND THAT THE
 7   COMMONWEALTH HAD MET ITS BURDEN OF PROVING YOU GUILTY
 8   BEYOND A REASONABLE DOUBT.
 9   ARE YOU AWARE THAT YOU HAVE THOSE RIGHTS?
10              THE DEFENDANT:  YES.
11              THE COURT:  AND DO YOU WISH TO GIVE UP THOSE
12   RIGHTS BY PLEADING GUILTY?
13              THE DEFENDANT:  YES.
14              THE COURT:  LET ME DESCRIBE SOME MORE RIGHTS
15   THAT YOU HAVE WHICH YOU WILL BE GIVING UP BY PLEADING
16   GUILTY.
17   NOW, AT A TRIAL YOU WOULD HAVE THE RIGHT TO CONFRONT THE
18   WITNESSES THAT TESTIFY; THAT IS, TO SEE THEM TESTIFY AND
19   TO HEAR THEM TESTIFY AND TO ASK ANY QUESTIONS THAT MIGHT
20   BE HELPFUL TO YOU.
21   YOU AND YOUR ATTORNEY WOULD ALSO HAVE THE RIGHT TO CALL
22   YOUR OWN WITNESSES AND PRESENT EVIDENCE IN YOUR OWN
23   DEFENSE.
24   ARE YOU AWARE THAT YOU HAVE THOSE RIGHTS?
```

1-19

```
 1              THE DEFENDANT:  YES.
 2              THE COURT:  AND DO YOU WISH TO GIVE UP THOSE
 3   RIGHTS BY PLEADING GUILTY?
 4              THE DEFENDANT:  YES.
 5              THE COURT:  NOW, LET ME DESCRIBE SOME MORE
 6   RIGHTS THAT YOU HAVE THAT YOU WILL BE GIVING UP BY
 7   PLEADING GUILTY.
 8   AT A TRIAL YOU WOULD HAVE THE RIGHT TO TESTIFY IN YOUR
 9   OWN BEHALF OR THE RIGHT TO REMAIN SILENT.  IF YOU CHOSE
10   TO REMAIN SILENT, THE JURY, IF YOU ASKED, WOULD BE TOLD
11   THAT NO ADVERSE INFERENCE MAY BE DRAWN FROM YOUR SILENCE;
12   THAT IS, THAT IT MAY NOT CONSIDER YOUR SILENCE IN ANY WAY
13   IN REACHING ITS VERDICT.
14   ARE YOU AWARE THAT YOU HAVE THOSE RIGHTS?
15              THE DEFENDANT:  YES.
16              THE COURT:  AND DO YOU WISH TO GIVE UP THOSE
17   RIGHTS BY PLEADING GUILTY?
18              THE DEFENDANT:  YES.
19              THE COURT:  NOW, IN ADDITION, YOU PRESENTLY
20   ENJOY THE PRIVILEGE AGAINST SELF-INCRIMINATION; THAT IS,
21   THE RIGHT TO REMAIN SILENT REGARDING CHARGES AGAINST YOU.
22   BUT IF YOU WERE TO PLEAD GUILTY, YOU WOULD BE WAIVING
23   THAT RIGHT AND YOU WOULD BE ASKED TO SPEAK OF THE CONDUCT
24   THAT YOU HAVE COMMITTED.
```

1-20

1  THE DEFENDANT: YES.

2  THE COURT: ARE YOU AWARE THAT YOU HAVE THOSE

3  RIGHTS?

4  THE DEFENDANT: YES.

5  THE COURT: AND DO YOU WISH TO GIVE THOSE

6  RIGHTS UP BY PLEADING GUILTY?

7  THE DEFENDANT: YES.

8  THE COURT: WERE THERE ANY MOTIONS TO DISMISS

9  OR SUPPRESS BY DEFENSE COUNSEL?

10  MR. FITZGERALD: NO.

11  MR. PROGEN: YOUR HONOR, IF I MAY.

12  PRIOR COUNSEL FILED A MOTION TO SUPPRESS BACK IN 1997,

13  BUT THE DEFENDANT DEFAULTED ON THAT. THERE WERE MOTIONS

14  FILED, BUT THEY WEREN'T EVER --

15  THE COURT: OKAY. ARE YOU AWARE THAT BY

16  PLEADING GUILTY YOU ARE GIVING UP YOUR RIGHT TO FILE OR

17  TO HAVE HEARD ANY MOTIONS TO SUPPRESS EVIDENCE AS WELL

18  AS ANY MOTIONS TO DISMISS?

19  THE DEFENDANT: YES.

20  THE COURT: IS THAT WHAT YOU WISH TO DO?

21  THE DEFENDANT: YES.

22  THE COURT: NOW, I AM REQUIRED TO TELL YOU IF

23  YOU ARE NOT A CITIZEN OF THE UNITED STATES, YOU ARE

24  HEREBY ADVISED THAT CONVICTION OF THE OFFENSE FOR WHICH

---

1-21

1  YOU HAVE BEEN CHARGED MAY HAVE THE CONSEQUENCES OF

2  DEPORTATION, EXCLUSION FROM ADMISSION TO THE UNITED

3  STATES, OR DENIAL OF NATURALIZATION PURSUANT TO THE LAWS

4  OF THE UNITED STATES.

5  DO YOU UNDERSTAND THAT YOUR GUILTY PLEA HERE MAY RESULT

6  IN YOUR DEPORTATION, OR YOUR EXCLUSION FROM ADMISSION TO

7  THIS COUNTRY, OR MAY PREVENT YOU FROM BECOMING A U.S

8  CITIZEN?

9  THE DEFENDANT: YES.

10  THE COURT: DO YOU STILL WISH TO PLEAD GUILTY?

11  THE DEFENDANT: YES.

12  THE COURT: DO YOU ALSO UNDERSTAND THAT BASED

13  ON A GUILTY FINDING HERE, THE REGISTRY OF MOTOR VEHICLES

14  MAY REVOKE YOUR LICENSE TO DRIVE FOR UP TO FIVE YEARS?

15  THE DEFENDANT: YES.

16  THE COURT: AND DO YOU STILL WISH TO PLEAD

17  GUILTY?

18  THE DEFENDANT: YES.

19  THE COURT: HAVE YOU HAD ENOUGH TIME TO SPEAK

20  WITH YOUR ATTORNEY ABOUT CHANGING YOUR PLEA HERE?

21  THE DEFENDANT: YES.

22  THE COURT: ARE YOU SATISFIED WITH THE ADVICE

23  AND THE REPRESENTATION HE HAS GIVEN YOU?

24  THE DEFENDANT: YES.

---

1-22

1  THE COURT: APART FROM YOUR PLEA AGREEMENT,

2  HAVE ANY PROMISES BEEN MADE WHICH HAVE CAUSED YOU TO

3  PLEAD GUILTY?

4  THE DEFENDANT: NO.

5  THE COURT: HAS ANYBODY THREATENED YOU OR

6  PRESSURED YOU TO PLEAD GUILTY?

7  THE DEFENDANT: NO.

8  THE COURT: ARE YOU CONFUSED IN ANY WAY BY

9  THESE PROCEEDINGS?

10  THE DEFENDANT: NO. EVERYTHING IS FINE.

11  THE COURT: DO YOU UNDERSTAND THE RIGHTS THAT

12  I HAVE DESCRIBED TO YOU AND THAT BY PLEADING GUILTY YOU

13  ARE GIVING UP THOSE RIGHTS?

14  THE DEFENDANT: YES.

15  THE COURT: ARE YOU PLEADING GUILTY HERE

16  WILLINGLY AND VOLUNTARILY?

17  THE DEFENDANT: YES.

18  THE COURT: COUNSEL, IS THERE ANY REASON THAT

19  YOU KNOW OF WHY I SHOULD NOT ACCEPT THIS PLEA.

20  MR. FITZGERALD: NO, YOUR HONOR.

21  THE COURT: MR. PROGEN, IS THERE ANY REASON

22  THAT YOU KNOW OF WHY I SHOULD NOT ACCEPT THIS PLEA?

23  MR. PROGEN: NO, YOUR HONOR.

24  THE COURT: AND MR. GUERRERO, IS THERE ANY

---

1-23

1  REASON THAT YOU KNOW OF WHY I SHOULD NOT ACCEPT THIS

2  PLEA?

3  THE DEFENDANT: NO, I DON'T SEE IT.

4  THE COURT: OKAY.

5  NOW, YOU HAVE SEEN AND SIGNED THIS WAIVER OF RIGHTS FORM

6  WHICH IS IN SPANISH; IS THAT CORRECT?

7  THE DEFENDANT: YES.

8  THE COURT: AND YOU UNDERSTAND THAT THIS FORM

9  SETS FORTH IN WRITING SOME OF THE RIGHTS AND OTHER

10  MATTERS THAT I HAVE DISCUSSED IN MORE DETAIL HERE?

11  THE DEFENDANT: YES.

12  THE COURT: ARE YOU AWARE THAT YOUR SIGNATURE

13  THERE INDICATES THAT YOU ARE AWARE OF THOSE RIGHTS AND

14  THAT YOU UNDERSTAND THEM AND THAT YOU WAIVE THEM; THAT

15  IS, THAT YOU GIVE THEM UP BY PLEADING GUILTY?

16  THE DEFENDANT: YES.

17  THE COURT: OKAY.

18  I WILL NOW ASK THE CLERK TO ANNOUNCE THE INDICTMENTS AND

19  HAVE THE DEFENDANT TENDER HIS PLEA OF GUILTY AS TO THEM.

20  THE CLERK: MR. GUERRERO, INDICTMENT

21  96-0666-1, TRAFFICKING IN COCAINE MORE THAN TWO HUNDRED

22  GRAMS; GUILTY OR NOT GUILTY?

23  THE DEFENDANT: GUILTY.

24  THE CLERK: 96-0666-2, POSSESSION OF AN ALTERED

1-24

1  LICENSE; GUILTY OR NOT GUILTY?

2         THE DEFENDANT:  GUILTY.

3         THE CLERK:  96-0666-3, POSSESSION OF A

4  CONTROLLED SUBSTANCE; GUILTY OR NOT GUILTY?

5         THE DEFENDANT:  GUILTY.

6         THE COURT:  YOU MAY STEP DOWN.

7  (DEFENDANT EXCUSED FROM WITNESS STAND)

8         THE COURT:  I ACCEPT MR. GUERRERO'S CHANGE OF

9  PLEA.  I FIND THAT THERE IS A FACTUAL BASIS FOR THE

10  GUILTY PLEA.  I FIND THAT HE IS NOT PRESENTLY UNDER THE

11  INFLUENCE OF DRUGS, OR ALCOHOL, AND IS NOT PRESENTLY

12  SUFFERING FROM ANY MENTAL ILLNESS OR CONDITION.

13  I FIND THAT HE UNDERSTANDS THE RIGHTS THAT HE IS WAIVING,

14  AND THAT HE IS WAIVING THOSE RIGHTS WILLINGLY,

15  VOLUNTARILY, AND INTELLIGENTLY.  AND I FIND HE

16  UNDERSTANDS THE CHARGES TO WHICH HE IS PLEADING GUILTY

17  AND THE CONSEQUENCES OF PLEADING GUILTY, AND THEREFORE,

18  HIS PLEA OF GUILTY IS ACCEPTED.

19  DOES ANYBODY WISH TO BE HEARD AS TO THE ISSUE OF

20  SENTENCING?

21         MR. PROGEN:  THE COMMONWEALTH DOES NOT.

22         MR. FITZGERALD:  NO, YOUR HONOR.

23         THE COURT:  MR. GUERRERO, DO YOU WISH TO BE

24  HEARD BEFORE I SENTENCE YOU?  YOU HAVE THE RIGHT TO SPEAK

---

1-25

1  TO ME, BUT YOU ARE NOT REQUIRED TO.

2         THE INTERPRETER:  WOULD YOU REPEAT THAT,

3  PLEASE.

4         THE COURT:  BEFORE I SENTENCE YOU YOU MAY SPEAK

5  WITH ME IF YOU WISH.  IF YOU WOULD PREFER NOT, YOU DON'T

6  HAVE TO.

7         THE DEFENDANT:  NO.  THE ONLY THING IS THAT

8  WHAT I DO ASK IF I GET CREDIT FOR THE TIME I HAVE SERVED?

9         THE COURT:  HAVING REVIEWED HIS PRIOR RECORD,

10  AS WELL AS THE REPORT FROM PRE-TRIAL PROBATION, I WILL

11  ACCEPT THE RECOMMENDATION OF BOTH THE PROSECUTION AND THE

12  DEFENSE AND SHALL IMPOSE THE SENTENCE WHICH HAS BEEN

13  AGREED UPON.

14         THE CLERK:  MR. GUERRERO, ON INDICTMENT

15  96-0666-1, TRAFFICKING IN COCAINE, ONE HUNDRED TO TWO

16  HUNDRED GRAMS; THE COURT HAVING CONSIDERED THE OFFENSE

17  OF WHICH YOU STAND CONVICTED ORDERS YOU BE PUNISHED BY

18  CONFINEMENT IN THE MASS CORRECTIONAL INSTITUTE AT

19  CEDAR-JUNCTION FOR NOT LESS THAN TEN; NO MORE THAN TWELVE

20  YEARS.  THIS SENTENCE TO BE SERVED FORTHWITH NOT

21  WITHSTANDING ANY SENTENCE YOU ARE NOW SERVING.

22  ON INDICTMENT 96-0666-2, POSSESSION OF ALTERED LICENSE;

23  CONCURRENT THREE TO FIVE YEARS AT MCI-CEDAR JUNCTION.

24  ON INDICTMENT 96-0666-3, POSSESSION OF HEROIN, ONE YEAR

---

1-26

1  IN THE HOUSE OF CORRECTION; CONCURRENT.

2  JULIO GUERRERO, YOU ARE NOTIFIED OF YOUR RIGHTS WITHIN

3  TEN DAYS TO APPEAL TO THE APPELLATE DIVISION OF THIS

4  COURT FOR REVIEW OF SENTENCE IMPOSED UPON YOU.  THERE

5  WILL ALSO BE A SIXTY DOLLAR VICTIM/WITNESS FEE AND A

6  HUNDRED FIFTY DOLLAR DRUG ASSESSMENT FEE.

7         THE COURT:  IS THERE ANY CREDIT FOR ANY TIME

8  SERVED.

9         THE CLERK:  HE IS DOING A SENTENCE, JUDGE.

10         MR. PROGEN:  THE WAY I UNDERSTAND IT, JUDGE,

11  I DON'T KNOW IF THERE WAS ANY -- I DON'T BELIEVE THERE

12  WAS ANY TIME HE WAS NOT OUT ON BAIL.

13         THE COURT:  OKAY.  SO BASICALLY, IT IS SIMPLY

14  THE FORTHWITH ELEMENT OF IT.

15         MR. PROGEN:  RIGHT.

16         MR. FITZGERALD:  YOUR HONOR, WITH RESPECT TO

17  THE TIME SINCE YOU REMOVED THE DEFAULT AND WARRANT, HE

18  HAS BEEN HELD IN THIS CASE, I BELIEVE HE WOULD BE HELD

19  ACCOUNTABLE FOR THAT TIME.

20         MR. PROGEN:  NOT WHILE HE IS SERVING A

21  SENTENCE.

22         THE COURT:  I DON'T THINK SO SINCE HE WAS

23  SERVING ANOTHER SENTENCE.  I THINK THE FORTHWITH QUALITY

24  WILL MEAN THAT HE WILL BE RECEIVING CREDIT FOR THIS AND

---

1-27

1  THE OTHER CHARGES AS OF TODAY, BUT I DON'T BELIEVE I

2  HAVE ..

3         MR. FITZGERALD:  THERE WAS TWENTY-FIVE DAYS AT

4  THE TIME OF HIS ARREST THAT HE WAS HELD ON BAIL.

5         THE COURT:  OKAY.  IF THERE WAS ANY TIME FOR

6  WHICH HE WAS HELD ON BAIL FOR WHICH HE WAS NOT SERVING

7  ANOTHER SENTENCE, HE SHALL BE CREDITED TO THAT TIME, BUT

8  I CANNOT CREDIT HIM FOR ANY TIME THAT HE WAS SERVING A

9  SENTENCE ON.  SO, IF INDEED, TWENTY-FIVE DAYS WAS SERVED

10  ON BAIL -- OR WAS SPENT ON BAIL WITHOUT ANY OTHER

11  SENTENCE HAVING BEEN IMPOSED ON HIM, THEN HE SHALL

12  RECEIVED CREDIT FOR THAT TWENTY-FIVE DAYS.

13         MR. PALUMBO:  WE DO HAVE THAT -- THOSE DAYS,

14  YOUR HONOR.  THAT IS IN THE COURT FILE.

15         THE CLERK:  WE GAVE HIM CREDIT FOR TWENTY-FIVE

16  DAYS.

17         MR. FITZGERALD:  THANK YOU.

18         THE CLERK:  ALL RIGHT.  MR. SHERIFF,

19  MR. GUERRERO IS IN YOUR CUSTODY UNDER SENTENCE.

20

21  (WHEREUPON MATTER OF COMMONWEALTH V. JULIO GUERRERO WAS

22  ADJOURNED.)

23

24

## CERTIFICATE

I, PATRICIA A. O'BRIEN, A CERTIFIED COURT REPORTER IN AND FOR THE COMMONWEALTH OF MASSACHUSETTS, DO HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT REPRESENTS A COMPLETE, TRUE, AND ACCURATE TRANSCRIPTION OF VERBATIM RECORDINGS TAKEN IN THE CRIMINAL MATTER OF COMMONWEALTH OF MASSACHUSETTS V. JULIO GUERRERO, CRIMINAL ACTION WOCR 96-0666 (1-3), AT WORCESTER SUPERIOR COURT, ON OCTOBER 14, 1999, TO THE BEST OF MY KNOWLEDGE, SKILL AND ABILITY.

PATRICIA A. O'BRIEN